## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| EYIOMA UWAZURIKE, NOAH SHANNON, NELSON BRANDS, TONY CASSIOPPI, JIREHL BROCK, HUNTER DEKKERS, ISIAH LEE, ARLAND BRUCE IV, DODGE SAUSER, DESHAWN HANIKA, AHRON ULIS, AARON BLOM, JACK JOHNSON, JAKE REMSBURG, JEREMIAH WILLIAMS, HARRY BRACY, HOWARD BROWN, KEATON ANTHONY, JACOB HENDERSON, GEHRIG CHRISTENSEN, BENJAMIN TALLMAN, ABE ASSAD, COBE SIEBRECHT, CULLAN SHRIEVER, PATRICK KENNEDY, JAKE ENGLISH, | CASE NO.: 24-146 |
| PLAINTIFFS, | COMPLAINT AND JURY DEMAND |
| vs. | |
| STATE OF IOWA, IOWA DEPARTMENT OF PUBLIC SAFETY, IOWA DIVISION OF CRIMINAL INVESTIGATION, and STEPHAN BAYENS, PAUL FEDDERSEN, DAVID JOBES, TROY NELSON, AND BRIAN SANGER, individually and in their official capacities with the STATE OF IOWA, IOWA DEPARTMENT OF PUBLIC SAFETY, IOWA DIVISION OF CRIMINAL INVESTIGATION. | |
| DEFENDANTS. | |

**COMES NOW**, the Plaintiffs, by and through their undersigned counsel, and for their Complaint and Jury Demand, respectfully state to the Court as follows:

1

## PARTIES

### A.    Plaintiffs

1.      Plaintiff Eyioma Uwazurike was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

2.      Plaintiff Noah Shannon was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

3.      Plaintiff Nelson Brands was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

4.      Plaintiff Tony Cassioppi was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

5.      Plaintiff Jirehl Brock was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

6.      Plaintiff Hunter Dekkers was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

7.      Plaintiff Isaiah Lee was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

8.      Plaintiff Arland Bruce IV was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

9.      Plaintiff Dodge Sauser was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

10.     Plaintiff DeShawn Hanika was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

11.    Plaintiff Ahron Ulis was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa basketball team.

12.    Plaintiff Aaron Blom was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

13.    Plaintiff Jack Johnson was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

14.    Plaintiff Jake Remsburg was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

15.    Plaintiff Jeremiah Williams was at all times material hereto residing in the State of Iowa and was a member of the Iowa State basketball team.

16.    Plaintiff Harry Bracy was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

17.    Plaintiff Howard Brown was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

18.    Plaintiff Keaton Anthony was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa baseball team.

19.    Plaintiff Jacob Henderson was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa baseball team.

20.    Plaintiff Gehrig Christensen was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa baseball team.

21.    Plaintiff Benjamin Tallman was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa baseball team.

3

22.     Plaintiff Abe Assad was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

23.     Plaintiff Cobe Siebrecht was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

24.     Plaintiff Cullan Schriever was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

25.     Plaintiff Patrick Kennedy was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

26.     Plaintiff Jake English was at all times material hereto residing in the State of Iowa and was a member of the Ellsworth Community College baseball team.

27.     Hereinafter, unless individually named, all of the aforementioned Plaintiffs shall be hereby referred to collectively as "Plaintiffs."

**B.     Defendants**

28.     Defendant State of Iowa is a sovereign state and has its principal place of business in Polk County, Iowa.

29.     Defendant Iowa Department of Public Safety ("DPS") is an agency within the State of Iowa responsible for the Iowa Division of Criminal Investigation. DPS is the employer of individually named Defendants as set forth below.

30.     Defendant Iowa Division of Criminal Investigation ("DCI") is a division under the direction and control of the State of Iowa and the Iowa Department of Public Safety with its principal administrative office located at 215 East 7th Street, Des Moines, Iowa 50319.DCI is the employer of individually named Defendants as set forth below.

4

31.     Defendant Stephan Bayens ("Bayens") was at all times material hereto believed to be a citizen and resident of Polk County, Iowa, and was employed as Commissioner of DPS under the supervision the State of Iowa and DPS. Commissioner Bayens was in a supervisory position over DCI and individually named Defendants set forth below at all times relevant to the events complained of herein.

32.     Defendant Paul Feddersen ("Feddersen") was at all times material hereto believed to be a citizen and resident of Polk County, Iowa, and was employed as Director of DCI under the control and supervision of the State of Iowa, DPS, and DCI. Director Feddersen was in a supervisory position over the individually named Defendants set forth below and had decision-making authority over the individuals at all times relevant to the events complained of herein. Feddersen also saw over the establishment and work product of DCI's Sports Wagering Unit.

33.     Defendant David Jobes ("Jobes") was at all times material hereto believed to be a citizen and resident of Polk County, Iowa, and was employed as Assistant Director of DCI under the control and supervision of the State of Iowa, DPS, DCI, Bayens, and Feddersen. At all times relevant to the events complained of herein, AD Jobes contributed to the investigation into Plaintiffs and was a primary person in charge of the investigation and criminal charges wrongfully filed against Plaintiffs.

34.     Defendant Troy Nelson ("Nelson") was at all times material hereto believed to be a citizen and resident of Polk County, Iowa, and was employed as the DCI Special Agent in Charge of DCI's Sports Wagering Unit, under the control and supervision of the State of Iowa, DPS, DCI, Bayens, Feddersen, and Jobes. At all

times relevant to the events complained of herein, SAC Nelson contributed to the investigation into Plaintiffs and was a primary person in charge of the investigation and criminal charges wrongfully filed against Plaintiffs.

35.     Defendant Brian Sanger ("Sanger") was at all times material hereto believed to be a citizen and resident of Polk County, Iowa, and was employed as a DCI Special Agent under the control and supervision of the State of Iowa, DPS, DCI, Bayens, Feddersen, and Jobes. At all times relevant to the events complained of herein, SA Sanger worked alongside SAC Nelson as a member of the DCI's Sports Wagering Unit and contributed to the investigation into Plaintiffs, was a primary person in charge of the investigation and criminal charges wrongfully filed against Plaintiffs.

36.     Hereinafter, unless individually named, all of the aforementioned Defendants shall be hereby referred to collectively as "Defendants."

## **JURISDICTION AND VENUE**

37.     Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343(a)(3).

38.     The events and actions referenced in this Complaint occurred in the Southern District of Iowa, therefore venue is proper under 28 U.S.C. §1391(b)(2).

39.     Venue is further proper in the Southern District of Iowa under 28 U.S.C. §1391(b)(1), as the District in which all Defendants are domiciled.

## GENERAL FACTUAL ALLEGATIONS

**A.  Division of Criminal Investigation's Use of GeoComply.**

40.    At all times relevant to the complaints alleged here, the State of Iowa, DPS, and Commissioner Baynes knew of DCI, Director Feddersen, AD Jobes, SAC Nelson, and SA Sanger's improper use of GeoComply and allowed for its intrusive application.

### I.  Overview of GeoComply.

41.    Initially formed in 2011, GeoComply Solutions, Inc. ( "GeoComply") is a Canadian corporation that is licensed to operate in the State of Iowa.

42.    GeoComply contracts and provides geolocation services to various large sports betting companies, including Draft Kings and Fan Duel, to ensure user compliance with State laws and regulations on online sports betting.

43.    When users such as Plaintiffs register with online betting companies, users consent to share their location data *with GeoComply*, who in turn provides this data back to the companies.

44.    In recent years, GeoComply has worked with various law enforcement agencies around the country, including here in Iowa.

### II.  Division of Criminal Investigation's Involvement.

45.    In May 2019, the State of Iowa legalized online sports betting for individuals twenty-one (21) years or older.

46.    In July 2019, GeoComply presented to the Iowa Racing and Gaming Commission ("IRGC") on the technology, software, and tools utilized in their geolocation services.

47.     At all times material hereto, employees and agents of the IRGC expressed concerns and hesitancies surrounding the partnership with Defendants and GeoComply.

48.     In 2021, DCI launched a special unit within its division called the "Sports Wagering Unit" ("Unit"), in response to the legalization of online sports betting in Iowa in May 2019.

49.     The Unit was led by SAC Nelson, with SA Sanger leading the Unit's use of GeoComply software for wrongfully investigating and indicting the Plaintiffs.

50.     In February 2021, SA Sanger emailed a GeoComply official asking for the "special sauce," used by GeoComply to collect data on sportsbooks and its users.

51.     Initially, the goal was used to facilitate assistance in collecting data as a part of a joint operation with the State of Illinois investigating various fraud organizations.

52.     Later, GeoComply's Senior Vice President, Lindsay Slade, told SA Sanger that GeoComply had found more "data points," for the investigators in Iowa and Illinois. Ms. Slade suggested to SA Sanger that GeoComply's software could be used to assist in future investigations, telling SA Sanger, "Perhaps it's best we discuss on the phone to determine how to move forward…"

53.     Following the call with Ms. Slade, SA Sanger wrote a report titled "Why GeoComply should be licensed in Iowa," and explaining how the current methods of investigating sports betting were inadequate and how GeoComply could improve the State of Iowa's efforts.

54.     Thereafter, SA Sanger expressed his desire to have GeoComply licensed by the IRGC which would require GeoComply to turn over its information to the State of Iowa and its agencies upon request and without a warrant.

55.     In June 2021, AD Jobes told DCI agents, including SA Sanger, that IRGC was following through with enacting a licensure requirement for GeoComply.

56.     In early 2022, GeoComply discussed with SA Sanger and SAC Nelson, amongst others, how their partnership was to commence and the early goals of the use of GeoComply's software.

57.     Following these conversations, SAC Nelson stated GeoComply would give DCI agents, including himself and SA Sanger, three (3) training sessions on using GeoComply's tools and software.

58.     In or about May 2022, GeoComply emailed numerous law enforcement agencies around the country to propose monthly meetings into the information GeoComply was obtaining.

59.     In July 2022, SA Sanger attended one of the aforementioned meetings.

60.     Recapping what he had learned, SA Sanger informed DCI that GeoComply had obtained evidence of credit card and identity theft among online sports betting users.

61.     As to how GeoComply obtained this information, GeoComply's tools were able to formulate "hot spots," which were single locations where a high number of accounts were separately placing sports wagers.

62.     Before the implementation of GeoComply's software by Defendants, GeoComply insisted the IRGC had to sign off on the use of GeoComply's technology.

63.     However, the IRGC was hesitant to this idea, stating they were unsure whether they could give Defendants access to GeoComply's technology.

64.     Upon continuous pressure by SAC Nelson, the IRGC agreed to allow Defendants utilization of GeoComply's tools and software.

65.     On August 23, 2022, IRGC Administrator Brian Ohorilko, emailed Danny Lawhon of the IRGC instructing him to inform GeoComply that the use of GeoComply software was restricted to Iowa Code §99F.12(2)(b).

66.     Beginning in September 2022, GeoComply gave its login credentials to various DCI agents, including SA Sanger and SAC Nelson, which allowed them to continue utilizing GeoComply's software and tools.

67.     In November 2022, GeoComply sent officials to conduct an in-person training session for various DCI agents who were using their own laptops, now equipped with the software, to work on "live cases."

68.     At the in-person meeting, GeoComply showed DCI agents how to use GeoComply's Pindrop map, which displayed the aforementioned "hot spots," where a high number of centralizing sports wagering was occurring.

69.     There, the DCI agents could zoom into various areas, using the technology, to highlight where several users were placing bets in a single location.

70.    In fact, GeoComply articulated how using this technology could allow Defendants to look for sports betting activity in areas where sports betting was prohibited, such as prisons and high schools.

71.    All of this occurred without the use and requirement of a warrant.

72.    In discovering this ability, SA Sanger turned his attention to the campuses of Iowa State University ("ISU") and the University of Iowa ("UI"), amongst other colleges.

73.    At no point did SA Sanger have any information on illegal sports wagering occurring at ISU or UI facilities.

74.    Nevertheless, in early 2023, SA Sanger utilized GeoComply's technology to draw a boundary around the ISU and UI athletic facilities to specifically identify Plaintiffs engaging in sports betting activity while inside ISU and Iowa facilities.

75.    SA Sanger admitted he did not obtain a warrant before utilizing GeoComply's software to investigate sports betting activity occurring in ISU or UI athletic facilities.

76.    The technology only allowed SA Sanger to identify account numbers and not account holders.

77.    Using this technology, SA Sanger and DCI then subpoenaed various sports betting companies' records which revealed account holders engaging in sports wagering at the facilities.

78.     After obtaining the various records and information without a warrant, prosecutors throughout the State of Iowa indicted the Plaintiffs for underage gambling and identity theft, amongst other charges.

79.     Then, GeoComply's stance on DCI's use of its software changed.

80.     Upon realizing SA Sanger and DCI's efforts in charging Plaintiffs without due process, GeoComply informed IRGC GeoComply was going to end the partnership with DCI by January 26, 2024.

81.     As a result of GeoComply informing IRGC of its intentions, IRGC also accused DCI and its agents of withholding information from them in their use and implementation of the GeoComply software.

82.     In fact, IRGC was not made aware of DCI's investigation and their tactics therein, until the criminal charges against Plaintiffs were filed and made public in 2023.

83.     In fact, during one of the criminal cases of the Plaintiffs, one of DCI's agents, Mark Ludwick, also accused DCI of withholding information and misleading Mr. Ludwick during the investigation.

84.     Specifically, Mr. Ludwick was told the investigation using GeoComply's software was to investigate the sports betting agencies, not individuals such as Plaintiffs. This was specifically relayed by Mr. Ludwick to Plaintiff Isaiah Lee, who was later charged.

85.     In fact, SAC Nelson congratulated Mr. Ludwick for "obtaining a confession," from one of the players.

86.     However, neither Mr. Ludwick nor Isaiah Lee were alone. Multiple DCI agents told Plaintiffs they were not the targets of the investigation but instead were only assisting in the investigation into the various sports betting companies.

87.     Moreover, as a result of the DCI's warrantless search of Plaintiffs, Plaintiffs' personal items, including their cell phones, were seized by various DCI officials and agents.

88.     These seizures occurred following the issuance of various invalid and unconstitutional warrants which were only set forth after, and because of, Defendants' use of GeoComply's software and technology without a warrant.

89.     After obtaining the illegally seized information, all of the Plaintiffs were subsequently indicted for various crimes.

90.     Due to DCI's actions and/or failures to legally investigate the Plaintiffs, the Plaintiffs were all indicted and some convicted, severely upending their lives, collegiate careers, and future opportunities, as set forth below.

**B.     Allegations Specific to Plaintiffs.**

91.     All allegations specific to Plaintiffs replead each preceding paragraph and their context and allegations as if fully set forth herein. All of Plaintiffs' allegations are to be read in conformance with the allegations asserted against Defendants set forth above.

92.     The factual nature specific to each Plaintiff set forth within this section would not have occurred without the actions, inactions, conduct, and failures of Defendants above.

## I.   Eyioma Uwazurike

93.   Plaintiff Eyioma Uwazurike ("Uwazurike") is a twenty-five-year-old former defensive lineman for the ISU football team.

94.   Uwazurike played for ISU's football program from 2017-2021.

95.   On April 30, 2022, Uwazurike was drafted by the Denver Broncos in the fourth (4th) round of the National Football League ("NFL") Draft.

96.   After starting in several games during his rookie season, on July 24, 2023, Uwazurike was suspended indefinitely by the NFL for gambling violations, stemming from the investigation and indictment by Defendants.

97.   On August 25, 2023, via Trial Information, Uwazurike was charged with Identity Theft, in violation of Iowa Code §715A.8, and Tampering with Records, in violation of Iowa Code §715A.5.

98.   On February 27, 2024, and on February 29, 2024, Uwazurike's legal counsel filed Motions to Suppress, seeking suppression of all of the evidence obtained to support Uwazurike's charges due to Defendants' conduct set forth above.

99.   On March 1, 2024, Assistant Story County Attorney Benjamin Matchan filed a Motion to Dismiss the charges against Uwazurike in light of the allegations set forth above.

100.   Further on March 1, 2024, the Honorable Judge Stephen Owen of the Second Judicial District of Iowa, dismissed the charges against Uwazurike with prejudice and in their entirety.

## II.    Noah Shannon

101.    Plaintiff Noah Shannon ("Shannon") is a former starting defensive lineman for the UI football team.

102.    Upon the initiation of the investigation into Shannon, in August 2023, the National Collegiate Athletic Association ("NCAA"), suspended Shannon for the entirety of the 2023 season.

103.    UI appealed Shannon's suspension.

104.    The NCAA denied this appeal in September 2023.

105.    In November 2023, the NCAA released new guidelines which stated not only would Shannon lose out on the remainder of the 2023 season, but would not be eligible to come back for his final season in 2024.

106.    Although Shannon was not and has not been charged by the State for his involvement in sports betting, Shannon was forced to miss the entirety of his senior season which included potential professional football opportunities, and his final year of eligibility.

107.    Shannon's suspension occurred before the disclosure of the Defendants' alleged conduct herein and due to Defendants' actions and/or failures, detrimentally affected Shannon's collegiate experiences and future opportunities.

## III.    Nelson Brands

108.    Plaintiff Nelson Brands ("Brands") is an All-American wrestler for UI who is currently applying for a medical redshirt, which if not granted, means his career at UI is over.

109.    Brands wrestled for his father, Terry Brands, associate head coach for the UI wrestling program from 2019-2023.

110.    As a part of the investigation into Plaintiffs, Brands was suspended by the NCAA for the entirety of the 2023-2024 season.

111.    UI appealed Brands' suspension.

112.    On December 19, 2023, the NCAA denied Brands' appeal, potentially ending his meritorious career with UI.

113.    Brands' suspension occurred before the disclosure of the Defendants' alleged conduct herein and due to Defendants' actions and/or failures, detrimentally affected Brands' collegiate experiences and future opportunities.

### IV.    Tony Cassioppi

114.    Plaintiff Tony Cassioppi ("Cassioppi") is an All-American wrestler for the UI wrestling program.

115.    Cassioppi wrestled for the UI wrestling program from 2018-2023.

116.    As a part of the investigation into Plaintiffs, Cassioppi was suspended by the NCAA for the entirety of the 2023-2024 season and was unable to compete in his final season as a member of the Iowa wrestling program.

117.    Cassioppi's suspension occurred before the disclosure of the Defendants' alleged conduct herein and due to Defendants' actions and/or failures, detrimentally affected Cassioppi's collegiate experiences and future opportunities.

### V.    Jirehl Brock

118.    Plaintiff Jirehl Brock ("Brock") is a twenty-three-year-old former starting running back for the ISU football team.

119. Brock played for ISU's football program from 2019-2022.

120. As a result of the investigation and charges levied against Brock, on or about August 21, 2023, Brock left the ISU football program and was unable to finish his collegiate career at ISU.

121. On September 21, 2023, via Trial Information, Brock was charged with Identity Theft, in violation of Iowa Code §715A.8 and Tampering with Records, in violation of Iowa Code §715A.5.

122. On February 27, 2024, Brock's legal counsel filed a Motion to Suppress, seeking suppression of all of the evidence obtained to support Brock's charges due to Sanger and DCI's warrantless searches and seizures set forth herein.

123. On March 1, 2024, Assistant Story County Attorney Matchan filed a Motion to Dismiss the charges against Brock in light of the allegations set forth herein.

124. Further on March 1, 2024, the Honorable Judge Owen dismissed the charges against Brock with prejudice and in their entirety.

125. Due to Defendants' actions and/or failures, Brock's collegiate experience and future opportunities have been detrimentally affected.

## VI.   Hunter Dekkers

126. Plaintiff Hunter Dekkers ("Dekkers") is a twenty-two-year-old former starting quarterback for the ISU football team.

127. Dekkers played for ISU's football program from 2020-2022.

128.   As a result of the investigation and charges levied against Dekkers, in or around August 2023, Dekkers left the ISU football program and was unable to finish his collegiate career at ISU.

129.   On August 1, 2023, Dekkers was charged with Tampering with Records, in violation of Iowa Code §715A.5.

130.   On September 7, 2023, before the disclosure of Defendants' conduct alleged herein, Dekkers entered into an agreement with the State wherein Dekkers pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

131.   As a result of the charges, the NCAA revoked Dekkers' remaining eligibility, effectively ending his collegiate career in the NCAA.

132.   Due to Defendants' actions and/or failures, Dekkers' collegiate experience and future opportunities have been detrimentally affected.

## VII.   Isaiah Lee

133.   Plaintiff Isaiah Lee ("Lee") is a twenty-three-year-old former starting running back for the ISU football team.

134.   Lee played for ISU's football program from 2018-2022.

135.   As a result of the investigation and charges levied against Lee, on or about August 14, 2023, Lee left the ISU football program and was unable to finish his collegiate career at ISU.

136.   On September 22, 2023, via Trial Information, Lee was charged with Identity Theft, in violation of Iowa Code §715A.8 and Tampering with Records, in violation of Iowa Code §715A.5.

137.    On February 27, 2024, and again on February 29, 2024, Lee's legal counsel filed a Motion to Suppress, seeking suppression of all of the evidence obtained to support Lee's charges due to Sanger and DCI's warrantless searches and seizures set forth herein.

138.    On March 1, 2024, Assistant Story County Attorney Matchan filed a Motion to Dismiss the charges against Lee in light of the allegations set forth herein.

139.    Further, on March 1, 2024, Judge Owen dismissed the charges against Lee with prejudice and in their entirety.

140.    Due to Defendants' actions and/or failures, Dekkers' collegiate experience and future opportunities have been detrimentally affected.

## VIII.  Arland Bruce IV

141.    Plaintiff Arland Bruce IV ("Bruce") is a twenty-one-year-old former wide receiver for the UI football team.

142.    Bruce played for Iowa's football program from 2021-2023.

143.    On August 23, 2023, via Trial Information, Bruce was charged with Tampering with Records, in violation of Iowa Code §715A.5.

144.    On September 15, 2023, before the disclosure of Defendants' conduct alleged herein, Bruce entered into a plea agreement with the State wherein Bruce pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

145.    As a result of the charges, the NCAA revoked Bruce's remaining eligibility, effectively ending his collegiate career in the NCAA.

146.    Due to Defendants' actions and/or failures, Dekkers' collegiate experience and future opportunities have been detrimentally affected.

## IX.    Dodge Sauser

147.    Plaintiff Dodge Sauser ("Sauser") is a twenty-one-year-old former offensive lineman for the ISU football team.

148.    Sauser played for ISU's football program from 2021-2022.

149.    On August 1, 2023, Sauser was charged with Tampering with Records, in violation of Iowa Code §715A.5.

150.    As a result of the investigation and charges levied against Sauser left the ISU football program and was unable to finish his collegiate career at ISU.

151.    On September 7, 2023, before the disclosure of Defendants' conduct alleged herein, Sauser entered into an agreement with the State wherein Sauser pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

152.    Due to Defendants' actions and/or failures, Sauser's collegiate experience and future opportunities have been detrimentally affected.

## X.    DeShawn Hanika

153.    Plaintiff DeShawn Hanika ("Hanika") is a twenty-four-year-old former tight end for the ISU football team.

154.    Hanika played for ISU's football program from 2020-2023.

155.    Hanika's initial criminal complaint, charging him with Tampering with Records, in violation of Iowa Code §715A.5 was filed on August 10, 2023.

156.    On September 28, 2023, via Trial Information, Hanika was formally charged with Identity Theft in violation of Iowa Code §715A.8 and Tampering with Records, in violation of Iowa Code §715A.5.

157.   On September 28, 2023, Hanika's legal counsel filed a Motion to Dismiss seeking dismissal of the charges against Hanika for lack of speedy indictment.

158.   On September 29, 2023, Assistant Story County Attorney David Fountain filed a Motion to Dismiss the charges against Hanika for the reasons set forth within Hanika's Motion to Dismiss.

159.   Further on October 2, 2023, the Honorable Judge Kathryn Austin of the Second Judicial District of Iowa, dismissed the charges against Hanika.

160.   As a result of the charges levied against Hanika, Hanika was forced to sit out the entire 2023-2024 football season.

161.   Due to Defendants' actions and/or failures, Hanika's collegiate experience and future opportunities have been detrimentally affected.

## XI.   Ahron Ulis

162.   Plaintiff Ahron Ulis ("Ulis") is a twenty-two-year-old former basketball player for the UI men's basketball team.

163.   Ulis played for UI's basketball program from 2020-2023.

164.   On August 23, 2023, via Trial Information, Ulis was charged with Tampering with Records, in violation of Iowa Code §715A.5.

165.   On September 15, 2023, before the disclosure of Defendants' conduct alleged herein, Ulis entered into a plea agreement with the State wherein Ulis pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

166.   As a result of the charges filed against Ulis, Ulis was unable to play during the entirety of the 2023-2024 season.

167.    Due to Defendants' actions and/or failures, Ulis' collegiate experience and future opportunities have been detrimentally affected.

## XII.   Aaron Blom

168.    Plaintiff Aaron Blom ("Blom") is a twenty-two-year-old former placekicker for the UI football team.

169.    Blom played for UI's football program from 2020-2022.

170.    On August 23, 2023, via Trial Information, Blom was charged with Tampering with Records, in violation of Iowa Code §715A.5.

171.    As a result of the investigation and charges levied against Blom, Blom left the UI football program and was unable to finish his collegiate career at Iowa.

172.    On September 7, 2023, before the disclosure of Defendants' conduct alleged herein, Blom pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

173.    Due to Defendants' actions and/or failures, Blom's collegiate experience and future opportunities have been detrimentally affected.

## XIII.  Jack Johnson

174.    Plaintiff Jack Johnson ("Johnson") is a twenty-two-year-old former wide receiver for the UI football team.

175.    Johnson played for UI's football program from 2020-2022.

176.    On August 23, 2023, via Trial Information, Johnson was charged with Tampering with Records, in violation of Iowa Code §715A.5.

177.   As a result of the investigation and charges levied against Johnson, Johnson left the UI football program and was unable to finish his collegiate career there.

178.   On September 14, 2023, before the disclosure of Defendants' conduct alleged herein, Johnson pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

179.   Due to Defendants' actions and/or failures, Johnson's collegiate experience and future opportunities have been detrimentally affected.

### XIV.   Jake Remsburg

180.   Plaintiff Jake Remsburg ("Remsburg") is a twenty-three-year-old former offensive lineman for the ISU football team.

181.   Remsburg played for ISU's football program from 2019-2023.

182.   On August 10, 2023, Remsburg was charged with Tampering with Records, in violation of Iowa Code §715A.5.

183.   On September 6, 2023, before the disclosure of Defendants' conduct alleged herein, Remsburg entered into an agreement wherein Remsburg pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

184.   As a result of the investigation and charges levied against Remsburg, Remsburg was suspended six (games by the NCAA and was forced to miss out on half of Remsburg's final season with ISU.

185.   Due to Defendants' actions and/or failures, Remsburg's collegiate experience and future opportunities have been detrimentally affected.

## XV.   Jeremiah Williams

186.   Plaintiff Jeremiah Williams ("Williams") is a twenty-one-year-old former basketball player for the ISU men's basketball team.

187.   Williams played for ISU's basketball team from 2022-2023.

188.   On August 18, 2023, Williams was charged with Tampering with Records, in violation of Iowa Code §715A.5.

189.   On September 20, 2023, before the disclosure of Defendants' conduct alleged herein, Williams entered into an agreement with the State wherein Williams pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

190.   Due to Defendants' actions and/or failures, Williams' collegiate experience and future opportunities have been detrimentally affected.

## XVI.  Harry Bracy

191.   Plaintiff Harry Bracy ("Bracy") is a twenty-two-year-old former defensive back for the UI football team.

192.   Bracy played for UI's football program from 2020-2022.

193.   On August 23, 2023, via Trial Information, Bracy was charged with Tampering with Records, in violation of Iowa Code §715A.5.

194.   On September 14, 2023, before the disclosure of Defendants' conduct alleged herein, Bracy entered into a plea agreement with the State wherein Bracy pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

195.   As a result of the charges levied against Bracy, Bracy was forced to sit out the entire 2023-2024 football season.

24

196.   Due to Defendants' actions and/or failures, Bracy's collegiate experience and future opportunities have been detrimentally affected.

**XVII. Howard Brown**

197.   Plaintiff Howard Brown ("Brown") is a twenty-year-old former defensive lineman for the ISU football team.

198.   Brown played for ISU's football program from 2021-2022.

199.   On August 18, 2023, Brown was charged with Tampering with Records, in violation of Iowa Code §715A.5.

200.   On September 18, 2023, before the disclosure of Defendants' conduct alleged herein, Brown entered into a plea agreement with the State wherein Brown pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

201.   As a result of the charges levied against Brown, Brown was forced to sit out the entire 2023-2024 football season.

202.   Due to Defendants' actions and/or failures, Brown's collegiate experience and future opportunities have been detrimentally affected.

**XVIII.    Keaton Anthony**

203.   Plaintiff Keaton Anthony ("Anthony") is a twenty-two-year-old former baseball player for the UI baseball team.

204.   Anthony played for Iowa's baseball program from 2021-2023.

205.   As a result of the investigation into Anthony, Anthony was forced to miss games in the 2023 baseball season for a "potential NCAA violation," surrounding sports wagering.

206.    Due to Defendants' actions and/or failures, Anthony's collegiate experience and future opportunities have been detrimentally affected.

## XIX.   Jacob Henderson

207.    Plaintiff Jacob Henderson ("Henderson") is a twenty-three-year-old former pitcher for the UI baseball team.

208.    Henderson played for UI's baseball program from 2020-2023.

209.    As a result of the investigation into Henderson, Henderson was forced to miss games in the 2023 baseball season for a "potential NCAA violation," surrounding sports wagering.

210.    Due to Defendants' actions and/or failures, Henderson's collegiate experience and future opportunities have been detrimentally affected.

## XX.    Gehrig Christensen

211.    Plaintiff Gehrig Christensen ("Christensen") is a twenty-one-year-old former baseball player for the UI baseball team.

212.    Christensen played for UI's baseball program from 2022-2023.

213.    On August 23, 2023, via Trial Information, Christensen was charged with Tampering with Records, in violation of Iowa Code §715A.5.

214.    On September 5, 2023, before the disclosure of Defendants' conduct alleged herein, Christensen entered into an agreement with the State wherein Christensen pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

215.    As a result of the investigation and charges levied against Christensen, Christensen left the UI baseball program and was unable to finish his collegiate career at UI.

216.    Due to Defendants' actions and/or failures, Christensen's collegiate experience and future opportunities have been detrimentally affected.

## XXI.   Benjamin Tallman

217.    Plaintiff Benjamin Tallman ("Tallman") is a twenty-four-year-old former baseball player for the UI baseball team.

218.    Tallman played for Iowa's baseball program from 2022-2023.

219.    As a result of the investigation into Tallman, Tallman was forced to miss games in the 2023 baseball season for a "potential NCAA violation," surrounding sports wagering.

220.    Due to Defendants' actions and/or failures, Tallman's collegiate experience and future opportunities have been detrimentally affected.

## XXII. Abe Assad

221.    Plaintiff Abe Assad ("Assad") is a twenty-three-year-old former UI wrestler.

222.    Assad wrestled for UI's wrestling program from 2019-2023.

223.    As a result of the investigation into Assad, the NCAA suspended Assad for his final season at Iowa.

224.    Assad appealed the suspension which was subsequently denied.

225.    Due to Defendants' actions and/or failures, Assad's collegiate experience and future opportunities have been detrimentally affected.

## XXIII.   Cobe Siebrecht

226.    Plaintiff Cobe Siebrecht ("Siebrecht") is a twenty-three-year-old former UI wrestler.

227.   Siebrecht wrestled for UI's wrestling program from 2019-2023.

228.   As a result of the investigation into Siebrecht, the NCAA suspended Siebrecht for his final season at UI.

229.   Siebrecht appealed the suspension which was subsequently denied.

230.   Due to Defendants' actions and/or failures, Siebrecht's collegiate experience and future opportunities have been detrimentally affected.

## XXIV. Cullan Shriever

231.   Plaintiff Cullan Shriever ("Shriever") is a twenty-two-year-old UI wrestler.

232.   Shriever has wrestled for the UI wrestling program since 2020.

233.   As a result of the investigation into Shriever, the NCAA suspended Shriever for part of the 2023-2024 season.

234.   Due to Defendants' actions and/or failures, Shriever's collegiate experience and future opportunities have been detrimentally affected.

## XXV.  Patrick Kennedy

235.   Plaintiff Patrick Kennedy ("Kennedy") is a twenty-two-year-old UI wrestler.

236.   Kennedy has wrestled for the UI wrestling program since 2020.

237.   As a result of the investigation into Kennedy, the NCAA suspended Kennedy for part of the 2023-2024 season.

238.   Due to Defendants' actions and/or failures, Kennedy's collegiate experience and future opportunities have been detrimentally affected.

**XXVI. Jake English**

239.    Plaintiff Jake English ("English") is a twenty-year-old former baseball player at Ellsworth Community College.

240.    On August 24, 2023, English was charged with Tampering with Records, in violation of Iowa Code §715A.5.

241.    On September 14, 2023, before the disclosure of Defendants' conduct alleged herein, English entered into a plea agreement with the State wherein English pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

242.    Due to Defendants' actions and/or failures, English's collegiate experience and future opportunities have been detrimentally affected.

## CAUSES OF ACTION

### COUNT I
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983**
**VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
**Right to be Free from Warrantless Search**
***(By All Plaintiffs Against Defendants David Jobes,***
***Troy Nelson, and Brian Sanger, in their individual capacities)***

243.    Plaintiffs replead each preceding paragraph as if fully set forth herein.

244.    AD Jobes is a person for a §1983 action for damages.

245.    SAC Nelson is a person for a §1983 action for damages.

246.    SA Sanger is a person for a §1983 action for damages.

247.    At all times material hereto, AD Jobes, SAC Nelson, and SA Sanger's actions and/or omissions were made under the color of authority and law as officers and employees of the State of Iowa, DPS, and DCI.

248.    On all dates relevant to the events complained of herein, AD Jobs, SAC Nelson, and SA Sanger violated Plaintiffs' constitutional rights by utilizing GeoComply software to illegally, and without a warrant, track Plaintiffs' activity on their cell phones.

249.    Plaintiffs had privacy interests in the cell phones that were searched as protected by *Carpenter v. U.S.*, 585 U.S. 296 (2018).

250.    AD Jobs, SAC Nelson, and SA Sanger violated Plaintiffs' clearly established Fourth and/or Fourteenth Amendment rights under the United States Constitution to be free from unlawful search.

251.    On all dates relevant to the events complained of herein, the law was clearly established that a search made without a warrant into a person's personal cell phone violated the Fourth and/or Fourteenth Amendments of the United States Constitution.

252.    AD Jobs, SAC Nelson, and SA Sanger demonstrated deliberate indifference to and reckless disregard for Plaintiffs' civil and constitutional rights by effectuating an unconstitutional search.

253.    The actions of AD Jobs, SAC Nelson, and SA Sanger were willful, wanton, and in gross disregard for Plaintiffs' civil rights, justifying an award of punitive damages.

254.    Plaintiffs request reasonable attorney fees and costs associated with the prosecution of this action under 42 U.S.C. §1988.

255.   As a direct and proximate result of AD Jobes, SAC Nelson, and SA Sanger's illegal and unjustified conduct, Plaintiffs have and will in the future suffer and incur the following damages:

    a.   Deprivation of their constitutional rights;

    b.   Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

    c.   Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

    d.   Punitive damages;

    e.   All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

    f.   Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants David Jobes, Troy Nelson, and Brian Sanger as follows:

    a.   Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

    b.   Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

    c.   Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

    d.   Punitive damages; and

    e.   Such relief as the Court deems just and equitable.

## COUNT II
### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983
### VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT
### TO THE UNITED STATES CONSTITUTION
### Right to be Free from Unreasonable Seizure
### (*By All Plaintiffs Against Defendants David Jobes,*
### *Troy Nelson, and Brian Sanger, in their individual capacities*)

256.    Plaintiffs replead each preceding paragraph as if fully set forth herein.

257.    AD Jobes is a person for a §1983 action for damages.

258.    SAC Nelson is a person for a §1983 action for damages.

259.    SA Sanger is a person for a §1983 action for damages.

260.    At all times material hereto, AD Jobes, SAC Nelson, and SA Sanger's actions and/or omissions were made under the color of authority and law as officers and employees of the State of Iowa, DPS, and DCI.

261.    On all dates relevant to the events complained of herein, Plaintiffs' constitutional rights were violated when their personal property, i.e. their cell phones and personal data, were unlawfully seized by agents of the State of Iowa, DPS, and DCI, at the direction of AD Jobes, SAC Nelson, and SA Sanger.

262.    The warrants used as justification to obtain Plaintiffs' cell phones and personal data were invalid as issued based on fruits of the poisonous tree.

263.    AD Jobes, SAC Nelson, and SA Sanger were in charge of the illegal investigation which utilized GeoComply software to search into Plaintiffs' personal activity on their cell phones which subsequently was used as justification to obtain an unlawful warrant for Plaintiffs' phones.

264.    In not having constitutional authority to do so, AD Jobes, SAC Nelson, and SA Sanger had no lawful right to seize Plaintiffs' cell phones and personal data

during the illegal investigation and search through Plaintiffs' personal property which Plaintiffs had undisputed privacy interests in.

265.  AD Jobes, SAC Nelson, and SA Sanger violated Plaintiffs' clearly established Fourth and/or Fourteenth Amendment rights under the United States Constitution to be free from unlawful seizure.

266.  On all dates relevant to the events complained of herein, the law clearly established a seizure made with an invalid warrant of a person's personal cell phone and personal data was considered fruits of the poisonous tree and violated the Fourth and/or Fourteenth Amendments of the United States Constitution.

267.  AD Jobes, SAC Nelson, and SA Sanger demonstrated a deliberate indifference to and reckless disregard for Plaintiffs' civil and constitutional rights by effectuating an unconstitutional seizure.

268.  The actions of AD Jobes, SAC Nelson, and SA Sanger were willful, wanton, and in gross disregard for Plaintiffs' civil rights, justifying an award of punitive damages.

269.  Plaintiffs request reasonable attorney fees and costs associated with the prosecution of this action under 42 U.S.C. §1988.

270.  As a direct and proximate result of AD Jobes, SAC Nelson, and SA Sanger's illegal and unjustified conduct, Plaintiffs have and will in the future suffer and incur the following damages:

 a.  Deprivation of their constitutional rights;

 b.  Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

c.  Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

d.  Punitive damages;

e.  All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

f.  Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the

Defendants David Jobes, Troy Nelson, and Brian Sanger as follows:

a.  Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b.  Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

c.  Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

d.  Punitive damages; and

e.  Such relief as the Court deems just and equitable.

## COUNT III
### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983
### VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT
### TO THE UNITED STATES CONSTITUTION
### *Monell* **Liability for Warrantless Search**
### **Failure to Train or Supervise**
### (*By All Plaintiffs Against Defendants State of Iowa, Iowa Department of Public Safety, Iowa Division of Criminal Investigation, and Stephen Bayens and Paul Feddersen, in their individual capacities*)

271.  Plaintiffs replead each preceding paragraph as if fully set forth herein.

272.    Defendants State of Iowa, DPS, and DCI are persons for a §1983 action for damages.

273.    Commissioner Bayens and Director Feddersen are persons for a §1983 action for damages.

274.    Defendants State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen were the employers or supervisors of AD Jobes, SAC Nelson, and SA Sanger at all times material herein.

275.    At all times material hereto, Commissioner Bayens' actions and/or omissions were made under the color of authority DPS.

276.    At all times material hereto, Director Feddersen's actions and/or omissions were made under the color of authority of DCI.

277.    The training programs for the State of Iowa, DPS, and DCI as administered by Commissioner Bayens and Director Feddersen were not adequate to train employees and agents on how to properly effectuate a legal search in situations similar to those described here.

278.    AD Jobes, SAC Nelson, and SA Sanger were not adequately supervised by the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen specifically in properly handling situations similar to those described here.

279.    The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen knew or should have known it was highly probable the actions of AD Jobes, SAC Nelson, and SA Sanger were unconstitutional and in violation of Plaintiffs' rights but did not take any action or provide further training and adequate

supervision of them.

280.    Based on information and belief, the choices made by the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen in circumstances such as these, a deprivation of Plaintiffs' constitutional rights arises.

281.    The State of Iowa, DPS, DCI,  Commissioner Bayens, and Director Feddersen's failure to adequately train and supervise amounted to deliberate indifference to the fact that potential actions taken by employees and agents could result in the violation of Plaintiffs' constitutional rights.

282.    The failure to provide adequate training and supervision caused the violation of Plaintiffs' constitutional rights.

283.    As a result, Plaintiffs sustained damages and injuries as follows:

   a.  Deprivation of their constitutional rights;

   b.  Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;
   c.  Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

   d.  Punitive damages;

   e.  All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

   f.  Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants State of Iowa, Iowa Department of Public Safety, Iowa Division of

Criminal Investigation, Stephan Bayens, and Paul Feddersen, as follows:

    a.  Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

    b.  Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

    c.  Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

    d.  Punitive damages; and

    e.  Such relief as the Court deems just and equitable.

**COUNT IV**
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983**
**VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
***Monell* Liability for Warrantless Search**
**Policy and Custom**
***(By All Plaintiffs Against Defendants State of Iowa, Iowa Department of Public Safety, Iowa Division of Criminal Investigation, and Stephen Bayens and Paul Feddersen, in their individual capacities)***

284.  Plaintiffs replead each preceding paragraph as if fully set forth herein.

285.  The State of Iowa, DPS, and DCI are persons for a §1983 action for damages.

286.  Commissioner Baynes and Director Feddersen are persons for a §1983 action for damages.

287.  The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen were the employers or supervisors of AD Jobes, SAC Nelson, and SA Sanger at all times material herein.

288.   At all times material hereto, Commissioner Bayens' actions and/or omissions were made under the color of authority of DPS.

289.   At all times material hereto, Director Feddersen's actions and/or omissions were made under the color of authority of DCI.

290.   The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen failed to establish and/or maintain and/or enforce policies, patterns, practices, or customs to ensure individuals subject to investigation and/or criminal proceedings initiated by Defendants' agency had their Fourth and/or Fourteenth Amendment rights, to be free from warrantless and unreasonable searches, protected.

291.   Before the events alleged herein, the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen deliberately and with reckless disregard for the constitutional rights of citizens failed to establish adequate policies, patterns, practices, or customs, for employees and agents as to actions, such as a search, to be taken before, during, and after investigation into individuals and the indictment of individuals.

292.   Alternatively, during the events alleged herein, the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen deliberately and with reckless disregard for the constitutional rights of citizens established inadequate and insufficient policies, patterns, practices, or customs for its employees and agents to employ when engaging in situations similar to those alleged here.

293.   As a direct and proximate result of these policies, patterns, practices, or customs, Plaintiffs have and will in the future suffer and incur legally cognizable damages.

294.   The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen deliberately and with reckless disregard for the constitutional rights of those people existing within their jurisdiction failed to establish and/or failed to enforce adequate and sufficient policies, patterns, practices, or customs for its employees and agents regarding constitutional searches against individuals subject to investigation and indictment.

295.   The actions and/or omissions of the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen regarding their employees and agents amounted to deliberate indifference to the rights of citizens, including Plaintiffs.

296.   The actions and/or omissions of Defendants State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen intruded upon Plaintiffs' right to be free from unreasonable and warrantless searches and seizures.

297.   As a result, Plaintiffs sustained damages and injuries as follows:

   a.  Deprivation of their constitutional rights;

   b.  Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;
   c.  Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

   d.  Punitive damages;

   e.  All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery

expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

f.  Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants State of Iowa, Iowa Department of Public Safety, Iowa Division of Criminal Investigation, Stephan Bayens, and Paul Feddersen, as follows:

a.  Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b.  Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

c.  Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

d.  Punitive damages; and

e.  Such relief as the Court deems just and equitable.

### COUNT V
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983**
**VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
***Monell* Liability for Unreasonable Seizure**
**Failure to Train or Supervise**
***(By All Plaintiffs Against Defendants State of Iowa, Iowa Department of Public Safety, Iowa Division of Criminal Investigation, and Stephen Bayens and Paul Feddersen, in their individual capacities)***

298.  Plaintiffs replead each preceding paragraph as if fully set forth herein.

299.  The State of Iowa, DPS, and DCI are persons for a §1983 action for damages.

40

300.    Commissioner Baynes and Director Feddersen are persons for a §1983 action for damages.

301.    The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen were the employers and supervisors of AD Jobes, SAC Nelson, and SA Sanger at all times material herein.

302.    At all times material hereto, Commissioner Bayens' actions and/or omissions were made under the color of authority of DPS.

303.    At all times material hereto, Director Feddersen's actions and/or omissions were made under the color of authority of DCI.

304.    The training programs for the State of Iowa, DPS, and DCI as administered by Commissioner Bayens and Director Feddersen were not adequate to train employees and agents on how to properly effectuate a lawful seizure in situations similar to those described here.

305.    AD Jobes, SAC Nelson, and SA Sanger were not adequately supervised by the State of Iowa, DPS, DCI, Bayens, and Feddersen specifically in properly handling situations similar to those described here.

306.    The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen knew or should have known it was highly probable the actions of AD Jobes, SAC Nelson, and SA Sanger were unconstitutional and in violation of Plaintiffs' rights but did not take any action or provide further training and adequate supervision of AD Jobes, SAC Nelson, and SA Sanger.

307.    Based on information and belief, the choices made by the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen in circumstances such as these, caused a deprivation of Plaintiffs' constitutional rights to arise.

308.    The State of Iowa, DPS, DCI, Commissioner Baynes, and Director Fedderson's failure to adequately train and supervise amounted to deliberate indifference to the fact that potential actions taken by employees and agents could result in the violation of Plaintiffs' constitutional rights.

309.    The failure to provide adequate training and supervision caused the violation of Plaintiffs' constitutional rights.

310.    As a result, Plaintiffs sustained damages and injuries as follows:

a.  Deprivation of their constitutional rights;

b.  Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

c.  Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

d.  Punitive damages;

e.  All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

f.  Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants State of Iowa, Iowa Department of Public Safety, Iowa Division of

Criminal Investigation, Stephan Bayens, and Paul Feddersen, as follows:

      a. Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

      b. Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

      c. Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

      d. Punitive damages; and

      e. Such relief as the Court deems just and equitable.

## COUNT VI
### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983
### VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### *Monell* Liability for Warrantless Seizure
### Policy and Custom
### (*By All Plaintiffs Against Defendants State of Iowa, Iowa Department of Public Safety, Iowa Division of Criminal Investigation, and Stephen Bayens and Paul Feddersen, in their individual capacities*)

311.    Plaintiffs replead each preceding paragraph as if fully set forth herein.

312.    The State of Iowa, DPS, and DCI are persons for a §1983 action for damages.

313.    Commissioner Baynes and Director Feddersen are persons for a §1983 action for damages.

314.    The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen were the employers and supervisors of AD Jobes, SAC Nelson, and SA Sanger at all times material herein.

315. At all times material hereto, Commissioner Bayens' actions and/or omissions were made under the color of authority of DPS.

316. At all times material hereto, Director Feddersen's actions and/or omissions were made under the color of authority of DCI.

317. The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen failed to establish and/or maintain and/or enforce policies, patterns, practices, or customs to ensure individuals subject to investigation and/or criminal proceedings initiated by Defendants' agency had their Fourth and/or Fourteenth Amendment rights, to be free from unreasonable seizures, protected.

318. Before the events alleged herein, the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen deliberately and with reckless disregard for the constitutional rights of citizens failed to establish adequate policies, patterns, practices, or customs, for employees and agents as to actions, such as an unlawful seizure, to be taken before, during, and after an investigation into individuals and the indictment of individuals.

319. Alternatively, during the events alleged herein, the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen deliberately and with reckless disregard for the constitutional rights of citizens established inadequate and insufficient policies, patterns, practices, or customs for its employees and agents to employ when engaging in situations similar to those alleged here.

320.   As a direct and proximate result of these policies, patterns, practices, or customs, Plaintiffs have and will in the future suffer and incur legally cognizable damages.

321.   The State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen deliberately and with reckless disregard for the constitutional rights of those people existing within their jurisdiction failed to establish and/or failed to enforce adequate and sufficient policies, patterns, practices, or customs for its employees and agents regarding constitutional seizures of individuals' personal property who are subject to investigation and indictment.

322.   The actions and/or omissions of the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen regarding their employees and agents amounted to deliberate indifference to the rights of citizens, including Plaintiffs.

323.   The actions and/or omissions of the State of Iowa, DPS, DCI, Commissioner Bayens, and Director Feddersen intruded upon Plaintiffs' right to be free from unreasonable and warrantless seizures.

324.   As a result, Plaintiffs sustained damages and injuries as follows:

a.   Deprivation of their constitutional rights;

b.   Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

c.   Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

d.   Punitive damages;

e.   All expenses associated with the prosecution of this action,

including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

f.  Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants State of Iowa, Iowa Department of Public Safety, Iowa Division of Criminal Investigation, Stephan Bayens, and Paul Feddersen, as follows:

a.  Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b.  Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

c.  Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

d.  Punitive damages; and

e.  Such relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury in this matter on all counts to which Plaintiffs are entitled to a jury.

GRIBBLE, BOLES, STEWART, & WITOSKY LAW

BY:   */s/ Matthew M. Boles*

Matthew M. Boles          AT0001037
Adam C. Witosky          AT0010436
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312
Telephone:   (515) 235-0551
Facsimile:   (515) 243-3696
Email: mboles@gbswlaw.com
        awitosky@gbswlaw.com
ATTORNEYS FOR PLAINTIFFS

LAW OFFICE OF VAN PLUMB

BY:   */s/ Van Plumb*

Van M. Plumb          AT0006380
108 3rd Street, Suite 350
Des Moines, Iowa 50309
Telephone:   (515) 777-3257
Facsimile:   (515) 777/3259
Email:  van@vplumblaw.com
ATTORNEY FOR PLAINTIFFS