## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| EYIOMA UWAZURIKE, NOAH SHANNON, NELSON BRANDS, TONY CASSIOPPI, JIREHL BROCK, HUNTER DEKKERS, ISAIAH LEE, ARLAND BRUCE IV, DODGE SAUSER, DeSHAWN HANIKA, AHRON ULIS, AARON BLOM, JACK JOHNSON, JAKE REMSBURG, JEREMIAH WILLIAMS, HARRY BRACY, HOWARD BROWN, KEATON ANTHONY, JACOB HENDERSON, GEHRIG CHRISTENSEN, BENJAMIN TALLMAN, ABE ASSAD, COBE SIEBRECHT, CULLAN SHRIEVER, PATRICK KENNEDY, JAKE ENGLISH, <br><br> PLAINTIFFS, <br><br> vs. <br><br> DAVID JOBES, TROY NELSON, BRIAN SANGER, CHRISTOPHER ADKINS, HEATHER DUENOW, PHILLIP KENNEDY AND CHRISTOPHER SWIGART. <br><br> DEFENDANTS. | CASE NO.: 24-146 <br><br><br><br><br><br> AMENDED COMPLAINT AND JURY DEMAND |

**COME NOW**, the Plaintiffs and for their Amended Complaint and Jury Demand state:

## PARTIES

**A. PLAINTIFFS**

1.     Plaintiff Eyioma Uwazurike was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

2.     Plaintiff Noah Shannon was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

3.     Plaintiff Nelson Brands was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

4.     Plaintiff Tony Cassioppi was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

5.     Plaintiff Jirehl Brock was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

6.     Plaintiff Hunter Dekkers was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

7.     Plaintiff Isaiah Lee was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

8.     Plaintiff Arland Bruce IV was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

9.     Plaintiff Dodge Sauser was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

10.     Plaintiff DeShawn Hanika was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

11.     Plaintiff Ahron Ulis was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa basketball team.

12.     Plaintiff Aaron Blom was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

13.     Plaintiff Jack Johnson was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

14.     Plaintiff Jake Remsburg was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

15.     Plaintiff Jeremiah Williams was at all times material hereto residing in the State of Iowa and was a member of the Iowa State basketball team.

16.     Plaintiff Harry Bracy was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa football team.

17.     Plaintiff Howard Brown was at all times material hereto residing in the State of Iowa and was a member of the Iowa State football team.

18.     Plaintiff Keaton Anthony was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa baseball team.

19.     Plaintiff Jacob Henderson was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa baseball team.

20.     Plaintiff Gehrig Christensen was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa baseball team.

21.     Plaintiff Benjamin Tallman was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa baseball team.

22.	Plaintiff Abe Assad was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

23.	Plaintiff Cobe Siebrecht was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

24.	Plaintiff Cullan Schriever was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

25.	Plaintiff Patrick Kennedy was at all times material hereto residing in the State of Iowa and was a member of the University of Iowa wrestling team.

26.	Plaintiff Jake English was at all times material hereto residing in the State of Iowa and was a member of the Ellsworth Community College baseball team.

27.	Hereinafter, unless individually named, all of the aforementioned Plaintiffs shall be hereby referred to collectively as "Plaintiffs."

**B.	DEFENDANTS**

28.	Defendant David Jobes was at all times material hereto believed to be a citizen and resident of Polk County, Iowa, and was employed as Assistant Director ("AD") of the Iowa Division of Criminal Investigations ("DCI") under the control and supervision of the State of Iowa, DPS, DCI, and Commissioner Stephan Bayens. At all times relevant to the events complained of herein, AD Jobes contributed to the investigation into Plaintiffs and was a primary person in charge of the investigation and criminal charges wrongfully filed against Plaintiffs. AD Jobes is being sued in his individual capacity.

29.	Defendant Troy Nelson was at all times material hereto believed to be a citizen and resident of Polk County, Iowa, and was employed as the DCI Special Agent in Charge ("SAC") of DCI's Sports Wagering Unit, under the control and supervision of the

State of Iowa, DPS, DCI, Commissioner Bayens, and AD Jobes. At all times relevant to the events complained of herein, SAC Nelson contributed to the investigation into Plaintiffs and was a primary person in charge of the investigation and criminal charges wrongfully filed against Plaintiffs. SAC Nelson is being sued in his individual capacity.

30.     Defendant Brian Sanger was at all times material hereto believed to be a citizen and resident of Dubuque County, Iowa, and was employed as a DCI Special Agent under the control and supervision of the State of Iowa, DPS, DCI, Commissioner Bayens, and AD Jobes. At all times relevant to the events complained of herein, SA Sanger worked as a member of the DCI's Sports Wagering Unit and contributed to the investigation into Plaintiffs, was a primary person in charge of the investigation, and committed a violation of each of the Plaintiffs' Fourth Amendment rights. SA Sanger is being sued in his individual capacity.

31.     Defendant Christopher Adkins was at all times material hereto believed to be a citizen and resident of Johnson County, Iowa, and was employed as a DCI Special Agent under the control and supervision of the State of Iowa, DPS, DCI, Commissioner Bayens, and AD Jobes. At all times relevant to the events complained of herein, SA Adkins worked as a member of the DCI's Sports Wagering Unit and contributed to the investigation into Plaintiffs, was a primary person in charge of the investigation, and committed a violation of each of the Plaintiffs' Fourth Amendment rights. SA Adkins is being sued in his individual capacity.

32.     Defendant Heather Duenow was at all times material hereto believed to be a citizen and resident of Winnebago County, Iowa, and was employed as a DCI Special Agent under the control and supervision of the State of Iowa, DPS, DCI, Commissioner

Bayens, and AD Jobes. At all times relevant to the events complained of herein, SA Duenow worked as a member of the DCI's Sports Wagering Unit and contributed to the investigation into Plaintiffs, was a primary person in charge of the investigation, and committed a violation of each of the Plaintiffs' Fourth Amendment rights. SA Duenow is being sued in her individual capacity.

33.     Defendant Phillip Kennedy was at all times material hereto believed to be a citizen and resident of Pottawattamie County, Iowa, and was employed as a DCI Special Agent under the control and supervision of the State of Iowa, DPS, DCI, Commissioner Bayens, and AD Jobes. At all times relevant to the events complained of herein, SA Kennedy worked as a member of the DCI's Sports Wagering Unit and contributed to the investigation into Plaintiffs, was a primary person in charge of the investigation, and committed a violation of each of the Plaintiffs' Fourth Amendment rights. SA Kennedy is being sued in his individual capacity.

34.     Defendant Christopher Swigart was at all times material hereto believed to be a citizen and resident of Marshall County, Iowa, and was employed as a DCI Special Agent under the control and supervision of the State of Iowa, DPS, DCI, Commissioner Bayens, and AD Jobes. At all times relevant to the events complained of herein, SA Swigart worked as a member of the DCI's Sports Wagering Unit and contributed to the investigation into Plaintiffs, was a primary person in charge of the investigation, and committed a violation of each of the Plaintiffs' Fourth Amendment rights. SA Swigart is being sued in his individual capacity.

35.     Hereinafter, unless individually named, all of the aforementioned Defendants shall be hereby referred to collectively as "Defendants."

## JURISDICTION AND VENUE

36.     The Court's jurisdiction is invoked under 28 U.S.C. §§1331 and 1343(a)(3).

37.     The events and actions referenced in this Complaint occurred in the Southern District of Iowa, therefore venue is proper under 28 U.S.C. §1391(b)(2).

38.     Venue is further proper in the Southern District of Iowa under 28 U.S.C.§1391(b)(1), as the District in which a Defendant resides, with all Defendants residents of the State in which the District is located.

## GENERAL FACTUAL ALLEGATIONS

**A.    DIVISION OF CRIMINAL INVESTIGATION'S USE OF GEOCOMPLY**

### I.    Overview of GeoComply.

39.     Initially formed in 2011, GeoComply Solutions, Inc. ("GeoComply") is a Canadian corporation licensed to operate in Iowa.

40.     GeoComply contracts and provides geolocation services to various large sports betting companies, including Draft Kings and FanDuel, to ensure user compliance with State laws and regulations on online sports betting.

41.     When users such as Plaintiffs register with online betting companies, the companies request access to the users' location data to verifying that online sports betting is available in the state and area where the users are located. Once users consent to share their location data with a respective online sports betting company, the companies share users' location data with GeoComply, who in turn provides verification back to the companies. Part of the information users agree to share is location data that tracks users' locations every time they open the online sports betting application ("App"). This information is captured by a software tool called Kibana.

7

42. Kibana, and GeoComply in return, collects location data when a user opens or uses the App, regardless of who is the account holder or if a bet is placed.

43. In recent years, GeoComply has worked with various law enforcement agencies nationwide, including here in Iowa.

## II. Division of Criminal Investigation's Involvement.

44. In May 2019, the State of Iowa legalized online sports betting for individuals twenty-one years or older.

45. In July 2019, GeoComply presented to the Iowa Racing and Gaming Commission ("IRGC") on the technology, software, and tools utilized in their geolocation services.

46. At all times material hereto, employees and agents of the IRGC expressed concerns and hesitancies surrounding the partnership with Defendants and GeoComply.

47. Between the dates of February 2, 2020, and December 21, 2022, the Plaintiffs either opened their own online sports betting accounts or were given access to someone else's account by the person who created the account.

48. The online sports betting companies were electronic service providers as defined by 18 U.S.C. §2510.

49. The online sports betting companies were remote computing service providers as defined by 18 U.S.C. §2711(2).

50. Each Plaintiff utilized a password and/or facial recognition technology on the App to restrict access from others to the account they created or had been authorized to use.

51.     Each of these Plaintiffs had been granted unfettered access and complete control over the accounts they created or had been authorized to use on these Apps.

52.     Each of the Plaintiffs produced electronic communications through these Apps.

53.     The terms and conditions of FanDuel or Draft Kings did not prohibit athletes from gambling, nor state that their geolocation data would be shared without meeting pre-requisites, such as suspicion of illegal activity or upon IGRC's direct request.

54.     In 2021, DCI launched a special unit within its division called the "Sports Wagering Unit" ("Unit"), in response to the legalization of online sports betting in Iowa.

55.     The Unit was led by SAC Nelson, with SA Sanger leading the Unit's use of GeoComply software for wrongfully investigating and indicting the Plaintiffs.

56.     The Unit was made up of Defendant Nelson, Defendant SA Sanger, Defendant SA Adkins, Defendant SA Duenow, Defendant SA Kennedy and Defendant SA Swigart.

57.     In February 2021, SA Sanger emailed a GeoComply official asking for the "special sauce," used by GeoComply to collect data on sportsbooks and its users.

58.     Initially, the goal was to facilitate assistance in collecting data as a part of a joint operation with the State of Illinois investigating various fraud organizations.

59.     Later, GeoComply's Senior Vice President, Lindsay Slade, told SA Sanger that GeoComply had found more "data points," for the investigators in Iowa and Illinois. Ms. Slade suggested to SA Sanger that GeoComply's software could be used to assist in future investigations, telling SA Sanger, "Perhaps it's best we discuss on the phone to determine how to move forward…"

9

60. Following the call with Ms. Slade, SA Sanger wrote a report titled "Why GeoComply should be licensed in Iowa," and explaining how the current methods of investigating sports betting were inadequate and how GeoComply could improve the State of Iowa's efforts.

61. SA Sanger stated in the report that the unit would "be faced with many legal, investigative and funding challenges."

62. SA Sanger also stated, "[t]here are many legal and administrative challenges that must be overcome in order to obtain success criminal convictions down the road."

63. Further, SA Sanger discussed search warrants and explicitly stated, "[f]or criminal investigations, DCI may still have to follow-up with a subpoena."

64. It was clear back in early 2021, that SA Sanger understood the legal issues he would be facing when investigating online gambling, including the necessity of obtaining warrants and issuing subpoenas based on probable cause or lawfully authorized purpose when conducting criminal investigations.

65. Thereafter, SA Sanger expressed his desire to have GeoComply licensed by the IRGC, which would require GeoComply to turn over its information to the State of Iowa and its agencies upon request and without a warrant.

66. In June 2021, AD Jobes told DCI agents, including SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart, that IRGC was following through with enacting a licensure requirement for GeoComply.

67. In early 2022, GeoComply discussed with SA Sanger and SAC Nelson, amongst others, how their partnership was to commence and the early goals of the use of GeoComply's software.

68. Following these conversations, SAC Nelson stated GeoComply would give DCI agents, including himself, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart, three training sessions on using GeoComply's tools and software.

69. In or about May 2022, GeoComply emailed numerous law enforcement agencies around the country to propose monthly meetings into the information GeoComply was obtaining.

70. In July 2022, SA Sanger, SA Adkins, and SA Duenow attended one of the aforementioned meetings.

71. Recapping what he had learned, SA Sanger informed DCI that GeoComply had obtained evidence of credit card and identity theft among online sports betting users.

72. As to how GeoComply obtained this information, GeoComply's tools were able to formulate "hot spots," which were single locations where a high number of accounts were separately placing sports wagers.

73. Before the implementation of GeoComply's software by Defendants, GeoComply insisted the IRGC had to sign off on the use of GeoComply's technology.

74. However, the IRGC was hesitant to this idea, stating they were unsure whether they could give Defendants access to GeoComply's technology.

75. Upon continuous pressure by SAC Nelson, the IRGC agreed to allow Defendants utilization of GeoComply's tools and software.

76.     On July 19, 2022, SA Sanger was aware that proxy betting was not illegal in Iowa. Further, proxy betting was not prohibited by DraftKings if done for individuals who were not exempt.

77.     On August 23, 2022, IRGC Administrator Brian Ohorilko emailed Danny Lawhon of the IRGC instructing him to inform GeoComply that the use of GeoComply software was restricted to Iowa Code §99F.12(2)(b).

78.     Ohorilko then emailed Lawhon on August 28, 2022, and copied SAC Nelson, setting out that they were permitting DCI to use Kibana in the enforcement of regulatory and criminal purposes for enforcement of Iowa Code §99F.12(2)(b).

79.     On September 15, 2022, SA Chris Swigart was told by Assistant Story County Attorney Tyler Grimm that a search warrant would be required for geolocation data. SA Swigart then relayed this information to IRGC members.

80.     SA Swigart stated in the email, "Tyler, (at the Story County Attorney's Office) ran this past me regarding a subpoena I submitted specifically for **geolocation data** with PointsBet Inc. USA. Tyler conveyed to me, it's his understanding that anytime I request geolocation data from a sportsbook, I'll need a search warrant to secure these specific records." (emphasis in original).

81.     Beginning in September 2022, GeoComply gave its login credentials to various DCI agents, including SA Sanger, SA Adkins, SA Duenow, SA Swigart, SA Kennedy, and SAC Nelson, which allowed them to continue utilizing GeoComply's software and tools.

82.     On September 29, 2022, SA Duenow inquired from GeoComply who owned the geolocation data and was told that the player/end-user is the owner of the geolocation

data when it is associated with their accounts or devices. The operator, e.g. sportsbooks, then provides authorization for GeoComply to process the location data on their behalf and the service agreements limit what they can do with that data. SA Swigart asked if this meant that DPS could access the players geolocations without a search warrant or subpoena and SA Duenow responded that "more general geolocation data without player identifiers are something GeoComply could provide."

83.     SA Swigart and SA Duenow went back and forth on what would require a search warrant – indicating they understood search warrants were required, especially given what the Story County Attorney told SA Swigart in September.

84.     On October 7, 2022, Commissioner Bayens emailed the Department of Public Safety's 2022 Bill Request, which included making proxy betting illegal under 99F.

85.     In November 2022, GeoComply sent officials to conduct an in-person training session for various DCI agents who were using their own laptops, now equipped with the software, to work on "live cases."

86.     At the in-person meeting, GeoComply showed DCI agents how to use GeoComply's Pindrop map, which displayed the aforementioned "hot spots," where a high number of centralizing sports wagering was occurring.

87.     Upon information and belief, each SA Sanger, Nelson, Swigart, Duenow, Kennedy, and Adkins were present for this meeting.

88.     There, the DCI agents could zoom into various areas, using the technology, to highlight where several users were placing bets in a single location.

89.     In fact, GeoComply articulated how using this technology could allow Defendants to look for sports betting activity in areas where sports betting was prohibited, such as prisons and high schools.

90.     All of this occurred without the use and requirement of a warrant.

91.     On December 21, 2022, SA Swigart indicated that he was completing a search warrant template for obtaining geolocation points from GeoComply.

92.     This is clear evidence that SA Swigart was aware that search warrants were necessary for obtaining geolocation points from GeoComply – just as the Story County Attorney told him in September.

93.     On January 5, 2023, SA Swigart shared his Geolocation Warrant Template referencing a section in the template title, "GENERAL BACKGROUND RELATING TO SPORTS BETTING GEOLOCATIONS AND RELEVANT TECHNOLOGY."

94.     The email, which was sent started addressing "All", was sent to InternetGaming@dps.state.ia.us.

95.     Upon information and belief, evidence in the possession of the Defendants will show each Defendants Nelson, Sanger, Adkins, Duenow, Kennedy, and Swigart were recipients of emails sent to the email address InternetGaming@dps.state.ia.us – including this email sent from SA Swigart regarding the geolocation warrant template.

96.     In discovering this ability, SA Sanger turned his attention to the campuses of Iowa State University ("ISU") and the University of Iowa ("UI"), amongst other colleges.

97.     At no point did SA Sanger have any information on illegal sports wagering occurring at ISU or UI facilities.

98.     Nevertheless, in early 2023, SA Sanger utilized GeoComply's technology to draw a boundary around the ISU and UI athletic facilities to specifically identify Plaintiffs engaging in sports betting activity while inside ISU and Iowa facilities.

99.     SA Sanger then used the Kibana tool to filter out all other data by drawing a boundary around those facilities. This enabled him to filter down the data to just the data points within the facilities.

100.    SA Sanger used Kibana to view historical data points at the ISU and UI Athletic Department training facilities, purportedly out of concern for match-fixing and sports wagering cheating.

101.    SA Sanger stated that he was concerned about match-fixing, yet Iowa State's last football game in 2022 was on November 26, 2022, and baseball season had not begun. Further, Iowa's last football game was on December 31, 2022.

102.    SA Sanger used the historical geolocation data points to identify electronic devices and online sports betting accounts opened and used throughout ISU and UI athletic facilities during the previous several months.

103.    SA Sanger then used Kibana's software to produce reports detailing the exact dates, times, and precise locations – including the users' homes and specific areas within other States that allowed online sports betting – in which each of those individually identified accounts or Apps were opened or used during the past several years.

104.    The aforementioned data provided Defendant Sanger with personal identifying information of the users of the individual online sports wagering accounts.

105.  SA Sanger admitted he did not obtain a warrant before utilizing GeoComply's software to investigate sports betting activity occurring in ISU or UI athletic facilities.

106.  Further, at the time he viewed the historical data points, SA Sanger did not have any tips or information suggesting that match-fixing and sports wagering cheating were occurring at ISU or Iowa facilities.

107.  SA Sanger also testified that before this investigation he had never been involved in a case involving inside knowledge or manipulation of the game or fixing the outcome of a game.

108.  On January 19, 2024, SA Sanger gave a deposition where he stated that when he opened the geofence of UI and ISU athletic facilities the only information he had access to was the account number associated with the betting application with no information about the actual transactions, if any, or whose name was on the account.

109.  On January 19, 2023, SA Sanger sent SAC Nelson an email stating "[m]aybe this Iowa Hawkeye Football case could be a springboard to allow IGRC and DCI access to ALL Iowa sports wagering and DFS accounts so we can ensure no college coaches, athletes, officials, athletic trainers, individuals close/inside a college sports program, along with statewide barred patrons don't have Iowa sports wagering accounts..."

110.  Clearly, SA Sanger was using Kibana to complete a blanket search without probable cause or lawfully authorized purpose with the hopes of searching "ALL" Iowa sports wagering accounts – in violation of the Fourth Amendment of the United States Constitution.

111.    On February 2, 2023, SA Adkins emailed SAC Nelson and SA Sanger where he admits, amongst other things, that "we don't necessarily have a crime on the books in Iowa, but I think it would be a good idea to report them to the University, the Big Ten, and the NCAAS. If they get suspended or get a scholarship taken away, so be it."

112.    Further, in this February 2, 2023, email, SA Adkins stated, "I think this is one of those things that would bring attention to our unit, not only in the public's eyes, but also as far as the commissioner and even possibly the legislatures."

113.    SA Adkins even stated, "And if we pursue this and it hits the media, which it would, and people start asking why nothing criminal was done – we can use that platform to hopefully push legislatures for code changes moving forward."

114.    SA Adkins admitted they did not have probable cause of criminal activity or lawfully authorized purpose yet wanted to pursue investigations to build a platform to "push legislatures for code changes moving forward."

115.    This is a gross misuse of police authority in violation of the Fourth Amendment of the United States Constitution.

116.    In this email on February 2, 2023, SA Adkins made a reference to something "Heather said yesterday". This was a reference to SA Duenow.

117.    Upon information and belief, the discussion on February 1, 2023 – the day before this email – included the team members of the Unit, including Defendants Nelson, Sanger, Duenow, Adkins, Kennedy, and Swigart – and each was aware that there was not probable cause that any crimes had been committed on UI or ISU campuses, nor a bona fide criminal investigation, yet the use of Kibana to perform geolocation searches

was being utilized in violation of the Fourth Amendment of the United States Constitution.

118.　Using this technology, on February 8, 2023, SA Sanger and DCI issued subpoenas from Dubuque County to FanDuel regarding 69 accounts and DraftKings regarding 73 accounts. The subpoenas requested:

> Subpoena IFIF005188 and IFIF005186
> 1) Account owner information – Name, DOB, SSN, Address, Account Status, Account Created Date, All Linked Email Addresses, Phone Numbers, Account Wallet Balances, All Linked Financial Accounts (Banks, Credit Cards, PayPal, Venmo, Wire Transfers, etc.)
> 2) All Account Linked Devices
> 3) Total Account Win & Loss Statement (Online & Retail)
> 4) All Deposits and Withdrawals along with their respective Geolocation Data (Online & Retail)
> 5) All Account Transactions and Wagering History (Online & Retail)
> 6) Total Account Promos Awarded/Used
> 7) Any Internal Account Notes including Account Notifications from GeoComply Solutions, Inc.
> 8) Initial Account Setup IP Address and Geolocation Data

119.　The subpoenas set out that the reason for the Applications were "Prohibited Activities."

120.　This general and ambiguous reason was used because none of the Defendants had probable cause or a bona fide investigation of a crime.

121.　In fact, on January 19, 2024, SA Sanger gave a deposition where he admitted that at the time the subpoenas were issued, he did not have reasonable suspicion that a crime had been committed.

122.　The Defendants knew that the subpoenas sought more than "subscriber/account info," and as the Story County Attorney advised in September 2022,

obtaining users' geolocation data from an online sports betting company "would require a warrant."

123.   Upon information and belief, the Plaintiffs herein state that 18 U.S.C. §2703 and their Fourth Amendment rights were violated when the aforementioned electronic data and information were obtained without a warrant, an administrative subpoena, the appropriate consent, or a court order without specific and articulable facts that the contents of the information sought were relevant and material to a criminal investigation.

124.   The Story County Attorney advised SA Swigart that such a generic and ambiguous application would not "establish grounds" for the necessary court order, and specifically referenced 18 U.S.C. §2703.

125.   Then, on March 2, 2023, SA Swigart informed SAC Nelson that "From what I just heard today on the GeoComply meeting, other states/jurisdiction researching account information on Kibana, requires a subsequent subpoena or search warrant to Geo Comply for the following: (1) locations geofenced, (2) accounts identified in the geofenced area." . . . :It's going to be a controversial issue for us to be able to articulate what leads to an investigator to search specific locations for accounts based on the absence of a complaint or lead." (emphasis added).

126.   SA Nelson replied on March 5, 2023, "Hmm, very interesting. Yeah I'll think through that. I'll talk further with you in Bettendorf. Thank you."

127.   On March 24, 2023, AD Jobes sent an email to SAC Nelson stating that "**Some agents are expressing concern related to the initial use of the geolocation data and the potential need to identify the source of the data in subsequent court proceedings**." (emphasis added).

128. On March 27, 2023, SA Heather Duenow requested a copy of GeoComply Terms and Conditions which specifically state:

> We disclose information to You solely in accordance with our published privacy statement/policy, these Guidelines, and/or applicable law:
>
> - A jurisdictionally valid subpoena is required to compel the disclosure of basic user records, which may include name, length of service, credit card information (including billing address), email address(es), and an IP address, if available.
> - A court order is required to compel the disclosure of certain records or other information related to a user account (not including contents of communications), which may include message headers and IP addresses, location information of devices over a period of time, in addition to the basic user records identified above.
> - A search warrant properly issued under the procedures described in the U.S. Federal Rules of Criminal Procedure (or equivalent state/province/country warrant procedures), based on a showing of probable cause, is required to compel the disclosure of the stored contents and information associated with any account.
>
> Appropriate use of these local processes is necessary for you to obtain information relating to specific devices or users ("User Identifying Information"). User Identifying Information includes:
>
> - Information relating to presence (or lack thereof) of an IP address or set of IP addresses in a given geographic area;
> - The identities and/or identifying information for associated with particular users/players/end-users (e.g., names, address, phone numbers, identification documents); and
> - Locations of devices over a given period of time.

129. The Defendants cannot claim that they were unaware a warrant should have been issued in this case. On April 14, 2023, SA Duenow – acting as a member of the Unit – obtained a Geofence warrant so that Kibana could be used in the investigation of two men unrelated to this case, Mr. Hobbs and Mr. Buckhanan. These two young men, age 19, were using Mr. Buckhanan's father's application to place underage bets.

130.    Accordingly, each of Defendants Duenow, Nelson, Sanger, Swigart, Kennedy, and Adkins were aware not only of when a search warrant was necessary, but the procedure to apply for one when attempting to obtain a Geofence warrant so that Kibana could be utilized.

131.    On April 19, 2023, SA Nelson sent an email to SA Sanger about the continued efforts to outlaw proxy betting in Iowa.

132.    On April 26, 2023, subpoenas were issued to ISU.

133.    The subpoena set out the reason for the Application was "Violations of 99F, Identity Theft, and Theft Cheating on a Sport Wagering Event."

134.    On April 30, 2023, search warrants pertaining to the cell phones of Eyioma Akunna Uwazurike and Rachel Francis' were authorized in Pottawattamie County. Promises of leniency were made to Eyioma Akunna Uwazurike and Rachel Francis resulting in them turning over their phones. The same promises were made to all the athletes.

135.    The warrant misrepresented the investigation by stating: "It was within the normal course of duties, investigators discovered numerous online sports wagering accounts which appeared to be suspicious and/or potentially fraudulent in nature." This statement was a material misrepresentation to the Court.

136.    On January 19, 2024, SA Sanger gave a deposition wherein he stated the reason for his initial review of the geolocation points within college athletic facilities was:

> Well, based on my knowledge and experience, if individuals wanted to infiltrate a sports team that there's legal wagers placed on and try to take advantage of inside information of those sports teams, you're going to want to be close to those sports teams, and you're going to want to go to where they have training centers, because that's where they develop their strategy

for the game they're going to play, that's where the coaches are, that's where the employees are. Those are people that have access to the players.

So if you're trying to do wrongdoing in the sports betting industry and trying to take advantage of inside knowledge or do anything that could manipulate or fix the outcome of the game or hinder it, you're going to want to be close to where those teams practice, play, develop their strategy to get any type of advantage you possibly can.

137. SA Sanger testified on January 19, 2024, that he had never been involved in an investigation wherein he developed this information.

138. SA Sanger described a hunch, a hunch that proved not to be true, and that were not within the normal course of his duties.

139. In the first week of May 2023, the athletes were informed that they were under investigation.

140. UI baseball players were informed on May 5, 2023, that they were suspended from the team.

141. ISU football players were informed on or about May 6, 2023, that they were suspended.

142. Plaintiff Uwazurike was informed by the NFL that he was suspended on July 24, 2023.

143. UI football players were informed on or about August 16, 2023, that they were suspended.

144. UI wrestlers were informed that they were under investigation in May of 2023. They were suspended on August 16, 2023, by the NCAA.

145. UI basketball players were informed in May of 2023 that they were under investigation. Jeremia Williams was suspended from the team until the investigation was over. He was suspended by the NCAA in August of 2023. Aaron Ulis, who had transferred

to Nebraska at the time of the investigation, was informed by Compliance that he was suspended from team activities on or about July 15, 2023, and received his NCAA suspension in February 2024.

146. Criminal charges were brought against sixteen of the athletes between August 1, 2023, and August 18, 2023. None of the UI football players, UI wrestlers, or UI baseball players were charged by the Johnson County Attorney's Office with an indictable criminal offense.

147. On May 8, 2023, the University of Iowa issued a press release that stated:

> The University has received information about 111 individuals. This includes 26 current student-athletes from baseball, football, men's basketball, men's track and field, and men's wrestling, as well as one full time employee of the UI Department of Athletics…According the UI, leadership was first notified on May 2, of potential criminal conduct related to sports wagering and possible NCAA violations.

148. On information and belief, it is stated that Plaintiffs believe the DCI Special Unit on Gambling released the names of student athletes to ISU and UI who may have violated NCAA rules in early May 2023.

149. On May 18, 2023, the Iowa DCI procured subpoenas in Dubuque County to GeoComply seeking:

> Any Internal Account Notes, Alerts, Notifications, SARs Reports including any Account Notifications from GeoComply Solutions, Inc. to Any Sportsbooks regarding the below account.

150. The Application stated the reason for the subpoenas were Violations of 99F, Tampering with Records, Fraud, and Identity Theft.

151. On June 6, 2023, a second subpoena identified as IFIF005439 was issued to Iowa State.

152. On June 7, 2023, a subpoena identified as IFIF005447 was used to obtain financial records from FanDuel wherein it was noted a credit/debit card in the name of Eyioma Uwazurike was used to make deposits into the sports wagering account and a credit/debit card in the name of Rachel Francis was used to make a deposit into the sports wagering account. Three additional deposits were made via an unknown bank account.

153. On June 7, 2023, a follow-up subpoena was sent to FanDuel regarding 35 of the previously listed 69 accounts on February 8, 2023, and Draft Kings regarding 25 of the previously listed 73 accounts also on February 8, 2023. The subpoena requested the same data requested previously with the added language of: "All records must include a '**Business Records Certificate of Authenticity.**'"

154. The Application stated the reason for the subpoenas were Tampering with Records, Violations of 99F, Cheating at a Sports Wagering Event and Fraud.

155. On June 20, 2023, subpoenas were issued in Dubuque County for the same data requested on May 18, 2023.

156. The Application stated the reason for the subpoenas were Violations of 99F, Tampering with Records, Fraud, and Identity Theft.

157. On June 20, 2023, the DCI issued a subpoena to US Bank to obtain the financial records of Rachel Francis and Eyioma Uwazurike.

158. During one of the criminal cases of the Plaintiffs, one of DCI's agents, Mark Ludwick, also accused DCI of withholding information and misleading him during the investigation.

159. Specifically, Mr. Ludwick was told the investigation using GeoComply's software was to investigate the sports betting agencies, not the Plaintiffs, who would not

be charged with a crime. This was specifically relayed by Mr. Ludwick to Plaintiff Isaiah Lee, who was later charged.

160.    In fact, SAC Nelson congratulated Mr. Ludwick for "obtaining a confession," from Isaiah Lee.

161.    However, neither Mr. Ludwick nor Isaiah Lee were alone. Multiple DCI agents told Plaintiffs they were not the targets of the investigation but instead were only assisting in the investigation into the various online sports betting companies.

162.    Moreover, as a result of the DCI's warrantless search of Plaintiffs, Plaintiffs' personal items, including their cell phones, were seized by various DCI officials and agents.

163.    SA Ludwick further testified on January 19, 2024, that:

   a. The geopoint locators search without a warrant by SA Sanger is an illegal search.
   b. SA Sanger did a very broad search under administrative rights of that geofence third party vendor they had access to.
   c. There was no probable cause or reasonable suspicion to start an investigation into this matter.
   d. The search of the geopoint locators was a constitutional violation of the athletes' rights.
   e. Story County is called the State of Story by DCI SA's because they are heavy on probable cause.
   f. 99F is for regulatory infractions only.
   g. It was a bit odd that the subpoenas and warrants were issued outside of Story and Johnson County.
   h. He had a conversation with SA Sanger wherein he expressed his displeasure, and disbelief, and dismay towards the investigation.
   i. SA Ludwick was asked if there was consensus or a group of DCI Agents that are very troubled by what the image of this particular investigation is and how it was conducted, his answer was, "Absolutely, to include so much that a special agent had a heart attack and died over this case."
   j. He would not be surprised if non-athletes were let go.

164. These seizures occurred following the issuance of various invalid and unconstitutional warrants which were only set forth after, and because of, Defendants' use of GeoComply's software and technology without a warrant and the issuance of subpoenas without probable cause or lawfully authorized purpose in violation of the Fourth Amendment of the United States Constitution.

165. After the Defendants obtained the illegally seized information without a warrant, all of the Plaintiffs were subsequently indicted for various crimes or suspended by the NCAA.

166. Due to DCI's actions and/or failures to legally investigate the Plaintiffs, the Plaintiffs were either suspended by the NCAA or indicted, with some convicted, severely upending their lives, collegiate careers, and future opportunities, as set forth below.

167. Once GeoComply learned of Defendants' illegal seizure of information, GeoComply's stance on DCI's use of its software changed.

168. Upon realizing SA Sanger and DCI's efforts in charging Plaintiffs without due process, GeoComply informed IRGC that GeoComply was going to end the partnership with DCI by January 26, 2024.

169. As a result of GeoComply informing IRGC of its intentions, IRGC also accused DCI and its agents of withholding information from them in their use and implementation of the GeoComply software.

170. In fact, IRGC was not made aware of DCI's investigation and their tactics therein, until the criminal complaints against many of the Plaintiffs were filed and made public in 2023.

171.    On January 19, 2024, SA Sanger gave a deposition where he stated that "I think this is a legal question that needs to be handled by the attorneys in this case," when asked if it was a crime to use someone else's account to place a bet in Iowa, better known as proxy betting.  This answer was given in spite of the information set out in Paragraph 80 and 131 above.

172.    On January 19, 2024, SA Sanger gave a deposition where he admitted that student athletes are allowed to bet on certain sporting events.

173.    On January 19, 2024, SA Sanger gave a deposition where he admitted that the geofenced information he had access to from the UI and ISU athletic facilities did not allow him to see whether a legal or illegal bet had been made. He also stated that he agreed that the App did not even indicate that a bet had been made, only that the App had been opened.

174.    On January 19, 2024, SA Sanger gave a deposition where he admitted that of the hundreds of subpoenas sent out, only 18 people were charged.

175.    On January 19, 2024, SA Sanger gave a deposition where he admitted that he received the go ahead to conduct the investigation, even though they did not have reasonable cause, from his supervisors Defendants Nelson and Jobes.

176.    On January 19, 2024, SA Sanger gave a deposition where he testified that Defendants Duenow, Adkins, Swigart, Sanger, and Nelson would have group meetings discussing decisions to use Kibana to search the UI and ISU facilities.

177.    On January 19, 2024, SA Sanger gave a deposition where he testified that Defendants Duenow, Adkins, Swigart, Sanger, Kennedy, and Nelson were all present for

the training in December of 2022 on GeoComply, and each were given their own log-ins to use the technology.

178. On January 19, 2024, SA Sanger gave a deposition where he testified that the first time he had ever seen Kibana was at the training in December of 2022.

179. On January 19, 2024, SA Sanger gave a deposition where he testified that AD Jobes was present at the training in December 2022.

180. On January 19, 2024, SA Sanger gave a deposition where he testified that no one truly used Kibana until the December 2022 training.

181. On January 19, 2024, SA Sanger gave a deposition where he testified that when he was first getting familiar with the Kibana product, he did searches of college freshman and sophomore dorms without a warrant or probable cause or bona fide criminal investigation. SA Sanger further testified that he informed AD Jobes and SAC Nelson about these warrantless searches at that time.

182. However, neither AD Jobes nor SAC Nelson stopped, discouraged, or prevented SA Sanger or any other members of the Unit from continuing to conduct warrantless searches using Kibana.

183. On January 19, 2024, SA Sanger gave a deposition where he testified that his discussions with AD Jobes and SAC Nelson about his warrantless searches of the freshman and sophomore dorms occurred prior to the warrantless and illegal searches of Plaintiffs which occurred in this case.

184. On January 19, 2024, SA Sanger gave a deposition where he testified that AD Jobes and SAC Nelson "approved the operation and the subpoenas to move forward with the investigation" as it related to the student athletes.

185. On January 19, 2024, SA Sanger gave a deposition where he testified that his continuous investigation of the freshmen and sophomore dorms without a warrant was prohibited by AD Jobes and SAC Nelson.

186. AD Jobes and SAC Nelson were approving subpoenas based off of warrantless and illegal searches in violation of the Fourth Amendment of the United States Constitution.

187. On January 19, 2024, SA Sanger gave a deposition where he testified that the general public did not have access to Kibana technology the way that SA Sanger could access the technology.

188. Accordingly, Defendants Sanger, Swigart, Duenow, Adkins, Kennedy, and Nelson were utilizing technology not available to the general public to perform warrantless and illegal searches of Plaintiffs in violation of the Fourth Amendment of the United States Constitution.

189. Each of the Plaintiffs in this case suffered deprivations of their liberty when their property, which they each had a reasonable expectation of privacy in, was illegally searched by each of the Defendants.

190. Each of the Plaintiffs in this case suffered deprivations of their liberty when their property, which they each had a reasonable expectation of privacy in, was illegally seized by subpoenas based on fruits of the poisonous tree and upon fabrications to the court by each of the Defendants.

191. At all times relevant to this lawsuit, each of the Defendants were acting under color of state law.

**B. ALLEGATIONS SPECIFIC TO PLAINTIFFS**

192. All allegations specific to Plaintiffs replead each preceding paragraph and their context and allegations as if fully set forth herein. All of the Plaintiffs' allegations are to be read in conformance with the allegations asserted against Defendants set forth above.

193. The factual nature specific to each Plaintiff set forth within this section would not have occurred without the actions, inactions, conduct, and failures of Defendants above.

**I. Eyioma Uwazurike**

194. Plaintiff Eyioma Uwazurike is a twenty-five-year-old former defensive lineman for the ISU football team.

195. Uwazurike played for ISU's football program from 2017-2021.

196. On April 30, 2022, Uwazurike was drafted by the Denver Broncos in the fourth round of the National Football League ("NFL") Draft.

197. On February 20, 2020, Rachal Francis opened an account with FanDual with the express intention of using it with Uwazurike. The account and App were downloaded onto Uwazurike's phone on the same day. Additionally, the account was linked to financial accounts in the name of Uwazurike, with corresponding DOB and SSN, who was of legal age for wagering in Iowa.

198. On April 30, 2023, search warrants pertaining to the cell phones of Eyioma Akunna Uwazurike and Rachel Francis were authorized in Pottawattamie County. Promises of leniency were made to the Uwazurike and Francis resulting in them turning over their phones.

199.    On June 7, 2023, subpoena IFIF005447 was used to obtain financial records from FanDuel wherein it was noted a credit/debit card in the name of Eyioma Uwazurike was used to make deposits into the sports wagering account and a credit/debit card in the name of Rachel Francis was used to make a deposit into the sports wagering account. Three additional deposits were made via an unknown bank account.

200.    Also on June 7, 2023, a comprehensive Cellebrite extraction report was finalized, utilizing data obtained from Uwazurike's cell phone. The Cellebrite report revealed that the phone is registered with an Apple ID linked to Uwazirke's iCloud and a phone number that was confirmed to belong to Uwazurike. Notably, the Cellebrite extraction report established a direct link between the FanDuel account activity and the Uwazurike's phone, spanning from 01/2022 through 04/2023. The FanDuel app's password was found on Uwazurike's phone, along with images of FanDuel and MGM bet slips that matched the wagering history associated with the subpoenaed FanDuel account.

201.    The Cellebrite report also revealed a phone with the device name "Rachel's iPhone" with a registered Apple ID linked to francis1@iastate.edu and the phone number, which was confirmed by Rachel Francis as her own. However, the Cellebrite extraction report confirmed that Francis's phone was not the primary device used to place sports wagers on the FanDuel account Uwazurike used. No FanDuel or Sportsbook applications were found on Rachel Francis's device.

202.    On June 20, 2023, subpoenas were issued in Dubuque County for the same data requested on May 18, 2023. GeoComply Solutions, Inc. confirmed that the account

was initially created using Francis' iPhone. Shortly after the initial account signup, Uwazurike's iPhone device was linked to Francis' FanDuel account.

203. The DCI also issued a subpoena to US Bank to obtain the financial records of Francis and Uwazurike on June 20, 2023.

204. After starting in several games during his rookie season, on July 24, 2023, Uwazurike was suspended indefinitely by the NFL for gambling violations, stemming from the investigation and indictment by Defendants.

205. On August 25, 2023, via Trial Information, Uwazurike was charged with Identity Theft, in violation of Iowa Code §715A.8, and Tampering with Records, in violation of Iowa Code §715A.5.

206. On February 27, 2024, and on February 29, 2024, Uwazurike's legal counsel filed Motions to Suppress, seeking suppression of all of the evidence obtained to support Uwazurike's charges due to Defendants' conduct set forth above.

207. On March 1, 2024, Assistant Story County Attorney Benjamin Matchan filed a Motion to Dismiss the charges against Uwazurike in light of the allegations set forth above.

208. Further on March 1, 2024, the Honorable Judge Stephen Owen of the Second Judicial District of Iowa, dismissed the charges against Uwazurike with prejudice and in their entirety.

209. At all times relevant to the events complained of herein, Uwazurike had the FanDuel application downloaded to his personal device.

210. At all times relevant to the events complained of herein, Uwazurike used his personal bank account in conjunction with the FanDuel account on his phone.

211.  During the relevant dates when GeoComply data was retrieved by Defendants, Uwazurike accessed the FanDuel application on his phone.

## II.  Noah Shannon

212.  Plaintiff Noah Shannon is a former starting defensive lineman for the UI football team.

213.  Shannon opened a FanDuel account in his own name, with accurate DOB and SSN information, on March 20, 2021. Shannon downloaded the FanDuel account and App to his phone on the same day.

214.  Shannon's personal bank account was connected to the FanDuel account.

215.  Upon the initiation of the investigation into Shannon, in August 2023, the National Collegiate Athletic Association ("NCAA"), suspended Shannon for the entirety of the 2023 season.

216.  UI appealed Shannon's suspension.

217.  The NCAA denied this appeal in September 2023.

218.  In November 2023, the NCAA released new guidelines which stated not only would Shannon lose out on the remainder of the 2023 season, but would not be eligible to come back for his final season in 2024.

219.  Although Shannon was not and has not been charged by the State for his involvement in sports betting, Shannon was forced to miss the entirety of his senior season which included potential professional football opportunities, and his final year of eligibility.

220.  At all times relevant to the events complained of herein, Shannon had the FanDuel application downloaded on his personal device.

221. At all times relevant to the events complained of herein, Shannon used his personal bank account in conjunction with the FanDuel account on his personal device.

222. At all times relevant to the events complained of herein, Shannon's name was listed on the FanDuel account on his device.

223. During the relevant dates when GeoComply data was retrieved by Defendants, Shannon accessed the FanDuel application on his phone.

224. Shannon's suspension occurred before the disclosure of the Defendants' alleged conduct herein and due to Defendants' actions and/or failures, detrimentally affected Shannon's collegiate experiences and future opportunities.

### III. Nelson Brands

225. Plaintiff Nelson Brands is an All-American wrestler for UI who is currently applying for a medical redshirt, which if not granted, means his career at UI is over.

226. Brands wrestled for his father, Terry Brands, associate head coach for the UI wrestling program from 2019-2023.

227. Brands opened a FanDuel and DraftKings account in his own name, with accurate DOB and SSN information, in or around September and November 2022. Brands downloaded the account and App to his phone at the same time.

228. As a part of the investigation into Plaintiffs, Brands was suspended by the NCAA for the entirety of the 2023-2024 season.

229. UI appealed Brands' suspension.

230. On December 19, 2023, the NCAA denied Brands' appeal, potentially ending his meritorious career with UI.

231. At all times relevant to the events complained of herein, Brands had both the FanDuel and DraftKings applications downloaded to his personal device(s).

232. At all times relevant to the events complained therein, Brands used his personal bank account in conjunction with the FanDuel and DraftKings accounts on his device.

233. At all times relevant to the events complained therein, Brands' name was listed on the FanDuel and DraftKings accounts.

234. During the relevant dates when GeoComply data was retrieved by Defendants, Brands accessed the FanDuel and DraftKings applications on his phone.

235. Brands' suspension occurred before the disclosure of the Defendants' alleged conduct herein and due to Defendants' actions and/or failures, detrimentally affected Brands' collegiate experiences and future opportunities.

## IV. Tony Cassioppi

236. Plaintiff Tony Cassioppi is an All-American wrestler for the UI wrestling program.

237. Cassioppi wrestled for the UI wrestling program from 2018-2023.

238. Cassioppi opened a DraftKings account in his own name, with accurate DOB and SSN information, on September 24, 2022. Cassioppi downloaded the DraftKings account and App to his phone on the same day.

239. As a part of the investigation into Plaintiffs, Cassioppi was suspended by the NCAA for the entirety of the 2023-2024 season and was unable to compete in his final season as a member of the Iowa wrestling program.

240. At all times relevant to the events complained of herein, Cassioppi had the DraftKings App downloaded to his personal device.

241. At all times relevant to the events complained therein, Cassioppi used his personal bank account in conjunction with the DraftKings App and account on his device.

242. At all times relevant to the events complained therein, Cassiopi's name was listed on the DraftKings account described above.

243. During the relevant dates when GeoComply data was retrieved by Defendants, Cassioppi accessed the DraftKings application on his phone.

244. Cassioppi's suspension occurred before the disclosure of the Defendants' alleged conduct herein and due to Defendants' actions and/or failures, detrimentally affected Cassioppi's collegiate experiences and future opportunities.

**V.  Jirehl Brock**

245. Plaintiff Jirehl Brock is a twenty-three-year-old former starting running back for the ISU football team.

246. Brock played for ISU's football program from 2019-2022.

247. On February 13, 2022, Lindzey Paysen opened an account with FanDuel with the express intention of Brock using it. Brock downloaded the account and App onto Brock's phone on the same day.

248. Brock had express consent from Paysen to download and use the account.

249. As a result of the investigation and charges levied against Brock, on or about August 21, 2023, Brock left the ISU football program and was unable to finish his collegiate career at ISU.

250. On September 21, 2023, via Trial Information, Brock was charged with Identity Theft, in violation of Iowa Code §715A.8 and Tampering with Records, in violation of Iowa Code §715A.5.

251. On February 27, 2024, Brock's legal counsel filed a Motion to Suppress, seeking suppression of all of the evidence obtained to support Brock's charges due to Sanger and DCI's warrantless searches and seizures set forth herein.

252. On March 1, 2024, Assistant Story County Attorney Matchan filed a Motion to Dismiss the charges against Brock in light of the allegations set forth herein.

253. Further on March 1, 2024, the Honorable Judge Owen dismissed the charges against Brock with prejudice and in their entirety.

254. At all times relevant to the events complained of herein, Brock had the FanDuel application downloaded to his personal device(s).

255. During the relevant dates when GeoComply data was retrieved by Defendants, Brock accessed the FanDuel application on his phone.

256. Due to Defendants' actions and/or failures, Brock's collegiate experience and future opportunities have been detrimentally affected.

## VI. Hunter Dekkers

257. Plaintiff Hunter Dekkers is a twenty-two-year-old former starting quarterback for the ISU football team.

258. Dekkers played for ISU's football program from 2020-2022.

259. In November of 2021, Jamie Dekkers opened an account with DraftKings with the express intention of Plaintiff Dekkers using it. Plaintiff Dekkers downloaded the account and App onto his phone on the same day.

260. Dekkers had express consent from Jamie Dekkers to download and use the account.

261. As a result of the investigation and charges levied against Dekkers, in or around August 2023, Dekkers left the ISU football program and was unable to finish his collegiate career at ISU.

262. On August 1, 2023, Dekkers was charged with Tampering with Records, in violation of Iowa Code §715A.5.

263. On September 7, 2023, before the disclosure of Defendants' conduct alleged herein, Dekkers entered into an agreement with the State wherein Dekkers pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

264. As a result of the charges, the NCAA revoked Dekkers' remaining eligibility, effectively ending his collegiate career in the NCAA.

265. At all times relevant to the events complained of herein, Dekkers had the DraftKings application downloaded to his personal device.

266. At all times relevant to the events complained therein, Dekkers had permission to the DraftKings account in Jamie Dekkers' name through the application on Dekkers' personal device.

267. At all times relevant to the events complained therein, Dekkers' bank account was one (1) of two (2) accounts used in conjunction with the DraftKings account.

268. During the relevant dates when GeoComply data was retrieved by Defendants, Dekkers accessed the DraftKings application on his phone.

269. Due to Defendants' actions and/or failures, Dekkers' collegiate experience and future opportunities have been detrimentally affected.

## VII. Isaiah Lee

270.    Plaintiff Isaiah Lee is a twenty-three-year-old former starting running back for the ISU football team.

271.    Lee played for ISU's football program from 2018-2022.

272.    On February 7, 2021, Kayla Coggeshall Cameron opened an account with FanDuel with the express intention of Lee using it. The account and App was downloaded onto Lee's phone on the same day. Additionally, the sports wagering account was linked to financial accounts in the name of Lee, with corresponding DOB and SSN, who was of legal age for wagering in Iowa.

273.    Lee had express consent from Cameron to download and use the account.

274.    As a result of the investigation and charges levied against Lee, on or about August 14, 2023, Lee left the ISU football program and was unable to finish his collegiate career at ISU.

275.    On September 22, 2023, via Trial Information, Lee was charged with Identity Theft, in violation of Iowa Code §715A.8 and Tampering with Records, in violation of Iowa Code §715A.5.

276.    On February 27, 2024, and again on February 29, 2024, Lee's legal counsel filed a Motion to Suppress, seeking suppression of all of the evidence obtained to support Lee's charges due to Sanger and DCI's warrantless searches and seizures set forth herein.

277.    On March 1, 2024, Assistant Story County Attorney Matchan filed a Motion to Dismiss the charges against Lee in light of the allegations set forth herein.

278.    Further, on March 1, 2024, Judge Owen dismissed the charges against Lee with prejudice and in their entirety.

279. At all times relevant to the events complained of herein, Lee had the FanDuel application downloaded to his personal device.

280. At all times relevant to the events complained therein, Lee had permission to access the FanDuel account in his fiancé's name through the application on his personal device.

281. At all times relevant to the events complained therein, Lee's bank account was used in conjunction with the FanDuel account described above.

282. During the relevant dates when GeoComply data was retrieved by Defendants, Lee accessed the FanDuel application on his phone.

283. Due to Defendants' actions and/or failures, Lee's collegiate experience and future opportunities have been detrimentally affected.

## VIII. Arland Bruce IV

284. Plaintiff Arland Bruce IV is a twenty-one-year-old former wide receiver for the UI football team.

285. Bruce played for Iowa's football program from 2021-2023.

286. In Spring 2021 Vincent Bruce opened an account with DraftKings with the express intention of Bruce using it. The account and App were downloaded onto Bruce's phone at the same time.

287. Bruce had express consent from Vincent Bruce to download and use the account.

288. On August 23, 2023, via Trial Information, Bruce was charged with Tampering with Records, in violation of Iowa Code §715A.5.

289. On September 15, 2023, before the disclosure of the Defendants' conduct alleged herein, Bruce entered into a plea agreement with the State wherein Bruce pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

290. As a result of the charges, the NCAA revoked Bruce's remaining eligibility, effectively ending his collegiate career in the NCAA.

291. At all times relevant to the events complained of herein, Bruce had the DraftKings application downloaded to his personal device.

292. At all times relevant to the events complained therein, Bruce had permission to the DraftKings account in his parent's name through the application on Bruce's personal device.

293. During the relevant dates when GeoComply data was retrieved by Defendants, Bruce accessed the DraftKings application on his phone.

294. Due to Defendants' actions and/or failures, Bruce' collegiate experience and future opportunities have been detrimentally affected.

## IX. Dodge Sauser

295. Plaintiff Dodge Sauser is a twenty-one-year-old former offensive lineman for the ISU football team.

296. Sauser played for ISU's football program from 2021-2022.

297. On April 21, 2022, Amananda Sauser opened an account with DraftKings with the express intention of Plaintiff Sauser using it. The account and App was downloaded onto Plaintiff Sauser's phone on the same day. Additionally, the sports wagering account was linked to financial accounts in the name of Sauser, with corresponding DOB and SSN.

298.    Sauser had express consent from Amanda Sauser to download and use the account.

299.    On August 1, 2023, Sauser was charged with Tampering with Records, in violation of Iowa Code §715A.5.

300.    As a result of the investigation and charges levied against Sauser left the ISU football program and was unable to finish his collegiate career at ISU.

301.    On September 7, 2023, before the disclosure of Defendants' conduct alleged herein, Sauser entered into an agreement with the State wherein Sauser pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

302.    At all times relevant to the events complained of herein, Sauser had the DraftKings application downloaded to his personal device.

303.    At all times relevant to the events complained therein, Sauser used his personal bank account in conjunction with the DraftKings application and account on his device.

304.    At all times relevant to the events complained therein, Sauser had permission to use the DraftKings account in his mother's name through the application on his personal device.

305.    During the relevant dates when GeoComply data was retrieved by Defendants, Sauser accessed the DraftKings application on his phone.

306.    Due to Defendants' actions and/or failures, Sauser's collegiate experience and future opportunities have been detrimentally affected.

### X.  DeShawn Hanika

307.  Plaintiff DeShawn Hanika is a twenty-four-year-old former tight end for the ISU football team.

308.  Hanika played for ISU's football program from 2020-2023.

309.  On March 18, 2022, Kim Hanika opened an account with DraftKings with the express intention of Plaintiff Hanika using it. The account and App was downloaded onto Plaintiff Hanika's phone on the same day. Additionally, the sports wagering account was linked to financial accounts in the name of Plaintiff Hanika, with corresponding DOB and SSN, who was of legal age for wagering in Iowa.

310.  Hanika had express consent from Kim Hanika to download and use the account.

311.  Hanika's initial criminal complaint, charging him with Tampering with Records, in violation of Iowa Code §715A.5 was filed on August 10, 2023.

312.  On September 28, 2023, via Trial Information, Hanika was formally charged with Identity Theft in violation of Iowa Code §715A.8 and Tampering with Records, in violation of Iowa Code §715A.5

313.  On September 28, 2023, Hanika's legal counsel filed a Motion to Dismiss seeking dismissal of the charges against Hanika for lack of speedy indictment.

314.  On September 29, 2023, Assistant Story County Attorney David Fountain filed a Motion to Dismiss the charges against Hanika for the reasons set forth within Hanika's Motion to Dismiss.

315.  Further on October 2, 2023, the Honorable Judge Kathryn Austin of the Second Judicial District of Iowa, dismissed the charges against Hanika.

316. As a result of the charges levied against Hanika, Hanika was forced to sit out the entire 2023-2024 football season.

317. At all times relevant to the events complained of herein, Hanika had the DraftKings application downloaded to his personal device.

318. At all times relevant to the events complained therein, Hanika used his personal bank account in conjunction with the DraftKings application and account on his device.

319. At all times relevant to the events complained therein, Hanika had permission to access the DraftKings account in his mother's name through the application on his personal device.

320. During the relevant dates when GeoComply data was retrieved by Defendants, Hanika accessed the DraftKings application on his phone.

321. Due to Defendants' actions and/or failures, Hanika's collegiate experience and future opportunities have been detrimentally affected.

## XI.     Ahron Ulis

322. Plaintiff Ahron Ulis is a twenty-two-year-old former basketball player for the UI men's basketball team.

323. Ulis played for UI's basketball program from 2020-2023.

324. In February 2021, Anton Porter, brother of Ulis, opened an account with FanDuel with the express intention of Ulis using it. The account and App were downloaded onto Ulis' phone on the same day. Additionally, the sports wagering account was linked to financial accounts in the name of Porter and Ulis, with corresponding DOB and SSN.

325. Ulis had express consent from Porter to download and use the account.

326. On August 23, 2023, via Trial Information, Ulis was charged with Tampering with Records, in violation of Iowa Code §715A.5.

327. On September 15, 2023, before the disclosure of Defendants' conduct alleged herein, Ulis entered into a plea agreement with the State wherein Ulis pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

328. As a result of the charges filed against Ulis, Ulis was unable to play during the entirety of the 2023-2024 season.

329. At all times relevant to the events complained of herein, Ulis had the FanDuel application downloaded to his personal device.

330. At all times relevant to the events complained therein, Ulis' bank account was one (1) of (2) accounts used in conjunction with the FanDuel account on his personal device.

331. At all times relevant to the events complained therein, Ulis had permission to access the FanDuel account in his brother's name through the application on his personal device.

332. During the relevant dates when GeoComply data was retrieved by Defendants, Ulis accessed the FanDuel application on his phone.

333. Due to Defendants' actions and/or failures, Ulis' collegiate experience and future opportunities have been detrimentally affected.

## XII. Aaron Blom

334.    Plaintiff Aaron Blom is a twenty-two-year-old former placekicker for the UI football team.

335.    Blom played for UI's football program from 2020-2022.

336.    In early 2021, Michelle Blom opened an account with DraftKings with the express intention of Plaintiff Blom using it. The account and App were downloaded onto Plaintiff Blom's phone at the same time. Additionally, the sports wagering account was linked to financial accounts in the name of Mr. Blom, with corresponding DOB and SSN.

337.    Mr. Blom had express consent from Michelle Blom to download and use the account.

338.    On August 23, 2023, via Trial Information, Blom was charged with Tampering with Records, in violation of Iowa Code §715A.5.

339.    As a result of the investigation and charges levied against Blom, Blom left the UI football program and was unable to finish his collegiate career at Iowa.

340.    On September 7, 2023, before the disclosure of Defendants' conduct alleged herein, Blom pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

341.    At all times relevant to the events complained of herein, Blom had the DraftKings application downloaded to his personal device.

342.    At all times relevant to the events complained therein, Blom's bank account was used in conjunction with the DraftKings account on his personal device.

343. At all times relevant to the events complained therein, Blom had permission to access the DraftKings account in his mother's name through the application on his personal device.

344. During the relevant dates when GeoComply data was retrieved by Defendants, Blom accessed the DraftKings application on his phone

345. Due to Defendants' actions and/or failures, Blom's collegiate experience and future opportunities have been detrimentally affected.

## XIII.  Jack Johnson

346. Plaintiff Jack Johnson is a twenty-two-year-old former wide receiver for the UI football team.

347. Johnson played for UI's football program from 2020-2022.

348. On September 3, 2021, Jill Johnson opened an account with DraftKings with the express intention of Plaintiff Johnson using it. The account and App were downloaded onto Plaintiff Johnson's phone on the same day.

349. Johnson had express consent from Cameron to download and use the account.

350. On August 23, 2023, via Trial Information, Johnson was charged with Tampering with Records, in violation of Iowa Code §715A.5.

351. As a result of the investigation and charges levied against Johnson, Johnson left the UI football program and was unable to finish his collegiate career there.

352. On September 14, 2023, before the disclosure of Defendants' conduct alleged herein, Johnson pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

353. At all times relevant to the events complained of herein, Johnson had the DraftKings application downloaded to his personal device.

354. At all times relevant to the events complained therein, Johnson had permission to the DraftKings account in his parent's name through the application on Johnson's personal device.

355. During the relevant dates when GeoComply data was retrieved by Defendants, Johnson accessed the DraftKings application on his phone.

356. Due to Defendants' actions and/or failures, Johnson's collegiate experience and future opportunities have been detrimentally affected.

### XIV. Jake Remsburg

357. Plaintiff Jake Remsburg is a twenty-three-year-old former offensive lineman for the ISU football team.

358. Remsburg played for ISU's football program from 2019-2023.

359. Remsburg opened a FanDuel account in his own name in November 2021. Remsburg downloaded the FanDuel account and application to his phone at the same time.

360. Remsburg's personal bank account was connected to the FanDuel account.

361. On January 24, 2021, Keri Remsburg Meis opened an account with DraftKings with the express intention of Mr. Remsburg using it. The account was downloaded onto Remsburg's phone on the same day. Additionally, the sports wagering account was linked to financial accounts in the name of Remsburg, with corresponding DOB and SSN, who was of legal age for wagering in Iowa.

362. Remsburg had express consent from Meis to download and use the DraftKings account.

363. On August 10, 2023, Remsburg was charged with Tampering with Records, in violation of Iowa Code §715A.5.

364. On September 6, 2023, before the disclosure of Defendants' conduct alleged herein, Remsburg entered into an agreement wherein Remsburg pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

365. As a result of the investigation and charges levied against Remsburg, Remsburg was suspended six games by the NCAA and was forced to miss out on half of Remsburg's final season with ISU.

366. At all times relevant to the events complained of herein, Remsburg had the FanDuel application downloaded to his personal device.

367. At all times relevant to the events complained therein, Remsburg had permission to the FanDuel account in his Keri Meis's name through the application on Remsburg's personal device.

368. During the relevant dates when GeoComply data was retrieved by Defendants, Remsburg accessed the FanDuel application on his phone.

369. Due to Defendants' actions and/or failures, Remsburg's collegiate experience and future opportunities have been detrimentally affected.

## XV. Jeremiah Williams

370. Plaintiff Jeremiah Williams is a twenty-one-year-old former basketball player for the ISU men's basketball team.

371. Williams played for ISU's basketball team from 2022-2023.

372. On information and belief, the Plaintiff states that Courtney Martin opened an account with FanDuel in October of 2022 with the express intention of Williams using it. The account and App were subsequently downloaded onto Williams' phone. Additionally, the account was linked to financial accounts in the name of Martin, with corresponding DOB and SSN.

373. Williams had express consent from Martin to download and use the account.

374. On August 18, 2023, Williams was charged with Tampering with Records, in violation of Iowa Code §715A.5.

375. On September 20, 2023, before the disclosure of Defendants' conduct alleged herein, Williams entered into an agreement with the State wherein Williams pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

376. At all times relevant to the events complained of herein, Williams had the FanDuel App downloaded to his personal device.

377. At all times relevant to the events complained therein, Williams had permission to use the FanDuel account in Courtney Martin's name through the App on Williams' personal device.

378. During the relevant dates when GeoComply data was retrieved by Defendants, Williams accessed the FanDuel App on his phone.

379. Due to Defendants' actions and/or failures, Williams' collegiate experience and future opportunities have been detrimentally affected.

**XVI. Harry Bracy**

380. Plaintiff Harry Bracy is a twenty-two-year-old former defensive back for the UI football team.

381. Bracy played for UI's football program from 2020-2022.

382. In Spring 2021 Vincent Bruce opened an account with DraftKings with the express intention of Bracy using it. The account and App were downloaded onto Bracy's phone at the same time.

383. Bracy had express consent from Vincent Bruce to download and use the account.

384. On August 23, 2023, via Trial Information, Bracy was charged with Tampering with Records, in violation of Iowa Code §715A.5.

385. On September 14, 2023, before the disclosure of Defendants' conduct alleged herein, Bracy entered into a plea agreement with the State wherein Bracy pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

386. As a result of the charges levied against Bracy, Bracy was forced to sit out the entire 2023-2024 football season.

387. At all times relevant to the events complained of herein, Bracy had the DraftKings App downloaded to his personal device.

388. At all times relevant to the events complained therein, Bracy had permission to the DraftKings account in Arland Richard Bruce IV's name through the App on Bracy's personal device.

389. During the relevant dates when GeoComply data was retrieved by Defendants, Bracy accessed the DraftKings application on his phone.

390. Due to Defendants' actions and/or failures, Bracy's collegiate experience and future opportunities have been detrimentally affected.

## XVII. Howard Brown

391.    Plaintiff Howard Brown is a twenty-year-old former defensive lineman for the ISU football team.

392.    Brown played for ISU's football program from 2021-2022.

393.    Brown downloaded the FanDuel App onto his phone in November of 2021. The account was registered under the name and personal information of Anthony Barner Jr., corresponding DOB and SSN, with the same address. The account was registered with an email address and the phone number directly linked to Anthony Barner Jr., who was of legal age for wagering in Iowa.

394.    Brown had express consent from Barner Jr. to download and use the account.

395.    On August 18, 2023, Brown was charged with Tampering with Records, in violation of Iowa Code §715A.5.

396.    On September 18, 2023, before the disclosure of Defendants' conduct alleged herein, Brown entered into a plea agreement with the State wherein Brown pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

397.    As a result of the charges levied against Brown, Brown was forced to sit out the entire 2023-2024 football season.

398.    At all times relevant to the events complained of herein, Brown had the FanDuel application downloaded to his personal device.

399.    At all times relevant to the actions complained of herein, Brown had permission to access the FanDuel account in his cousin's name through the application on his personal device.

400. During the relevant dates when GeoComply data was retrieved by Defendants, Brown accessed the FanDuel application on his phone.

401. Due to Defendants' actions and/or failures, Brown's collegiate experience and future opportunities have been detrimentally affected.

## XVIII. Keaton Anthony

402. Plaintiff Keaton Anthony is a twenty-two-year-old former baseball player for the UI baseball team.

403. Anthony played for Iowa's baseball program from 2021-2023.

404. Anthony opened a FanDuel account in his own name, with accurate DOB and SSN information, in October 2022. Anthony downloaded the FanDuel account and App to his phone at the same time.

405. Anthony's personal bank account was connected to the FanDuel account.

406. As a result of the investigation into Anthony, Anthony was forced to miss the remainder of the 2023 baseball season from May 5 for a "potential NCAA violation," surrounding sports wagering. Although Anthony was not and has not been charged by the State for his involvement in sports betting, his draft stock with the MLB was negatively affected.

407. At all times relevant to the events complained of herein. Anthony had the FanDuel App downloaded to his personal device.

408. At all times relevant to the events complained of herein, Anthony's bank account was used in conjunction with the FanDuel account and App.

409. At all times relevant to the events complained of herein, Anthony's name was listed on the FanDuel account described above.

410.　During the relevant dates when GeoComply data was retrieved by Defendants, Anthony accessed the FanDuel App on his phone.

411.　Due to Defendants' actions and/or failures, Anthony's collegiate experience and future opportunities have been detrimentally affected.

## XIX. Jacob Henderson

412.　Plaintiff Jacob Henderson is a twenty-three-year-old former pitcher for the UI baseball team.

413.　Henderson played for UI's baseball program from 2020-2023.

414.　Henderson opened a DraftKings account in his own name, with accurate DOB and SSN information, on February 3, 2022. Henderson downloaded the DraftKings account and App to his phone on the same day.

415.　Henderson's personal bank account was connected to the DraftKings account.

416.　As a result of the investigation into Henderson, Henderson was forced to miss games in the 2023 baseball season for a "potential NCAA violation," surrounding sports wagering.

417.　At all times relevant to the events complained of herein, Henderson had the DraftKings application downloaded to his personal device.

418.　At all times relevant to the events complained of herein, Henderson's bank account was used in conjunction with the DraftKings account and application.

419.　At all times relevant to the events complained of herein, Henderson's name was listed on the DraftKings account described above.

420.    During the relevant dates when GeoComply data was retrieved by Defendants, Henderson accessed the DraftKings application on his phone.

421.    Due to Defendants' actions and/or failures, Henderson's collegiate experience and future opportunities have been detrimentally affected.

## XX. Gehrig Christensen

422.    Plaintiff Gehrig Christensen is a twenty-one-year-old former baseball player for the UI baseball team.

423.    Christensen played for UI's baseball program from 2022-2023.

424.    In August 2022, Jill Mingles opened an account with DraftKings with the express intention of Christensen using it. The account and App was downloaded onto Christensen's phone on the same day.

425.    Christensen had express consent from Mingles to download and use the account.

426.    On August 23, 2023, via Trial Information, Christensen was charged with Tampering with Records, in violation of Iowa Code §715A.5.

427.    On September 5, 2023, before the disclosure of Defendants' conduct alleged herein, Christensen entered into an agreement with the State wherein Christensen pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

428.    As a result of the investigation and charges levied against Christensen, Christensen left the UI baseball program and was unable to finish his collegiate career at UI.

429.    At all times relevant to the events complained of herein, Christensen had the DraftKings App downloaded on his personal device.

430. At all times relevant to the events complained of herein, Christensen had permission to access the DraftKings account in his mother's name through the App on his personal device.

431. During the relevant dates when GeoComply data was retrieved by Defendants, Christensen accessed the DraftKings application on his phone.

432. Due to Defendants' actions and/or failures, Christensen's collegiate experience and future opportunities have been detrimentally affected.

## XXI. Benjamin Tallman

433. Plaintiff Benjamin Tallman is a twenty-four-year-old former baseball player for the UI baseball team.

434. Tallman played for Iowa's baseball program from 2022-2023.

435. Tallman opened a DraftKings account in his own name, with accurate DOB and SSN information, in September 2022. Tallman downloaded the DraftKings account and App to his phone around the same time.

436. Tallman's personal bank account was connected to the DraftKings account.

437. As a result of the investigation into Tallman, Tallman was forced to miss games in the 2023 baseball season for a "potential NCAA violation," surrounding sports wagering.

438. At all times relevant to the events complained of therein, Tallman had the DraftKings App downloaded on his personal device.

439. At all times relevant to the events complained of therein, Tallman's name was listed on his DraftKings account.

440.    At all times relevant to the events complained of therein, Tallman's personal bank account was used in conjunction with the DraftKings account described above.

441.    During the relevant dates when GeoComply data was retrieved by Defendants, Tallman accessed the DraftKings App on his phone.

442.    Due to Defendants' actions and/or failures, Tallman's collegiate experience and future opportunities have been detrimentally affected.

**XXII.    Abe Assad**

443.    Plaintiff Abe Assad is a twenty-three-year-old former UI wrestler.

444.    Assad wrestled for UI's wrestling program from 2019-2023.

445.    Assad opened a FanDuel and DraftKings account in his own name, with accurate DOB and SSN information, on February 25, 2022. Assad downloaded the accounts and Apps to his phone on the same day.

446.    Assad's personal bank account was connected to the accounts.

447.    As a result of the investigation into Assad, the NCAA suspended Assad for his final season at Iowa.

448.    Assad appealed the suspension which was subsequently denied.

449.    At all times relevant to the events complained of herein, Assad had the FanDuel and DraftKings applications downloaded on his personal device.

450.    At all times relevant to the events complained of herein, Assad's name was listed on the FanDuel and DraftKings accounts.

451.    At all times relevant to the events complained of herein, Assad's personal bank account was used in conjunction with the FanDuel and DraftKings accounts described above.

452. During the relevant dates when GeoComply data was retrieved by Defendants, Assad accessed the FanDuel App on his phone.

453. Due to Defendants' actions and/or failures, Assad's collegiate experience and future opportunities have been detrimentally affected.

## XXIII. Cobe Siebrecht

454. Plaintiff Cobe Siebrecht is a twenty-three-year-old former UI wrestler.

455. Siebrecht wrestled for UI's wrestling program from 2019-2023.

456. Siebrecht opened a FanDuel and DraftKings account in his own name, with accurate DOB and SSN information, in September 2022. Siebrecht downloaded the accounts and the Apps to his phone on the same day.

457. Siebrecht's personal bank account was connected to the accounts.

458. As a result of the investigation into Siebrecht, the NCAA suspended Siebrecht for his final season at UI.

459. Siebrecht appealed the suspension which was subsequently denied.

460. At all times relevant to the events complained of herein, Siebrecht had the FanDuel and DraftKings Apps downloaded on his personal device.

461. At all times relevant to the events complained of herein, Siebrecht name was listed on the FanDuel and DraftKings accounts.

462. At all times relevant to the events complained of herein, Siebrecht's personal bank account was used in conjunction with the FanDuel and DraftKings accounts described above.

463. During the relevant dates when GeoComply data was retrieved by Defendants, Siebrecht accessed the FanDuel and DraftKings Apps on his phone.

464. Due to Defendants' actions and/or failures, Siebrecht's collegiate experience and future opportunities have been detrimentally affected.

## XXIV. Cullan Shriever

465. Plaintiff Cullan Shriever is a twenty-two-year-old UI wrestler.

466. Shriever has wrestled for the UI wrestling program since 2020.

467. Shriever opened a DraftKings account in his own name, with accurate DOB and SSN information, on December 21, 2022. Shriever downloaded the DraftKings account and App to his phone on the same day.

468. Shriever's personal bank account was connected to the DraftKings account.

469. As a result of the investigation into Shriever, the NCAA suspended Shriever for part of the 2023-2024 season.

470. At all times relevant to the events complained of herein, Schriever had the DraftKings App downloaded on his personal device.

471. At all times relevant to the events complained of herein, Schriever's name was listed on the DraftKings account.

472. At all times relevant to the events complained of herein, Schriever's personal bank account was used in conjunction with the DraftKings account described above.

473. During the relevant dates when GeoComply data was retrieved by Defendants, Schriever accessed the DraftKings App on his phone.

474. Due to Defendants' actions and/or failures, Shriever's collegiate experience and future opportunities have been detrimentally affected.

## XXV. Patrick Kennedy

475. Plaintiff Patrick Kennedy is a twenty-two-year-old UI wrestler.

476. Kennedy has wrestled for the UI wrestling program since 2020.

477. Kennedy opened a DraftKings account in his own name, with accurate DOB and SSN information, on November 20, 2022. Kennedy downloaded the DraftKings account and App to his phone on the same day.

478. Kennedy's personal bank account was connected to the DraftKings account.

479. As a result of the investigation into Kennedy, the NCAA suspended Kennedy for part of the 2023-2024 season.

480. At all times relevant to the events complained of herein, Kennedy had the DraftKings App downloaded on his personal device.

481. At all times relevant to the events complained of herein, Kennedy's name was listed on the DraftKings account.

482. At all times relevant to the events complained of herein, Kennedy's personal bank account was used in conjunction with the DraftKings account described above.

483. During the relevant dates when GeoComply data was retrieved by Defendants, Kennedy accessed the DraftKings App on his phone.

484. Due to Defendants' actions and/or failures, Kennedy's collegiate experience and future opportunities have been detrimentally affected.

## XXVI.  Jake English

485. Plaintiff Jake English is a twenty-year-old former baseball player at Ellsworth Community College.

486. In September 2021, Matt English opened an account with FanDuel with the express intention of Jake English using it. The account and App was downloaded onto

Jake phone on the same day. Additionally, the sports wagering account was linked to financial accounts in the name of Plaintiff English, with corresponding DOB and SSN.

487. English had express consent from Matt English to download and use the account.

488. On August 24, 2023, English was charged with Tampering with Records, in violation of Iowa Code §715A.5.

489. On September 14, 2023, before the disclosure of Defendants' conduct alleged herein, English entered into a plea agreement with the State wherein English pled guilty to Underage Gambling in violation of Iowa Code §725.19(1).

490. At all times relevant to the events complained of herein, English had the FanDuel application downloaded on his personal device.

491. At all times relevant to the events complained of herein, English had permission to access the FanDuel account in his brother's name through the application on his personal device.

492. At all times relevant to the events complained of herein, English's personal bank account was used in conjunction with the FanDuel account described above.

493. During the relevant dates when GeoComply data was retrieved by Defendants, English accessed the FanDuel application on his phone.

494. Due to Defendants' actions and/or failures, English's collegiate experience and future opportunities have been detrimentally affected.

# CAUSES OF ACTION
## COUNT I
### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983 VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### Right to be Free from Warrantless Search
### Illegal Geofence Search
### *(By All Plaintiffs Against Defendants David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heather Duenow, Phillip Kennedy, and Christopher Swigart, in their individual capacities)*

495. Plaintiffs replead each preceding paragraph as if fully set forth herein.

496. The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches.

497. A search under the Fourth Amendment occurs when a governmental employee or agent of the government violates an individual's reasonable expectation of privacy.

498. AD Jobes is a person for a §1983 action for damages.

499. SAC Nelson is a person for a §1983 action for damages.

500. SA Sanger is a person for a §1983 action for damages.

501. SA Adkins is a person for a §1983 action for damages.

502. SA Duenow is a person for a §1983 action for damages.

503. SA Kennedy is a person for a §1983 action for damages.

504. SA Swigart is a person for a §1983 action for damages.

505. At all times material hereto, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart's actions and/or omissions were made under the color of authority and law as officers and employees of the State of Iowa, DPS, and DCI.

506. On all dates relevant to the events complained of herein, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart violated Plaintiffs' constitutional rights by utilizing GeoComply software to illegally, and without a warrant, track Plaintiffs' activity on their cell phones.

507. Plaintiffs had privacy interests in the cell phones that were searched as protected by *Carpenter v. U.S.*, 585 U.S. 296 (2018).

508. Plaintiffs had a privacy interest in their locations that were accessed via Defendants' illegal search of GeoComply, which is a right that has historically been protected by *U.S. v. Jones*, 565 U.S. 400 (2012) and *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021).

509. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart violated Plaintiffs' clearly established Fourth and/or Fourteenth Amendment rights under the United States Constitution to be free from unlawful search.

510. On all dates relevant to the events complained of herein, the law was clearly established that a search made without a warrant into a person's personal cell phone violated the Fourth and/or Fourteenth Amendments of the United States Constitution.

511. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart demonstrated deliberate indifference to and reckless disregard for Plaintiffs' civil and constitutional rights by effectuating an unconstitutional search.

512. The actions of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart were willful, wanton, and in gross disregard for Plaintiffs' civil rights, justifying an award of punitive damages.

513.     Plaintiffs request reasonable attorney fees and costs associated with the prosecution of this action under 42 U.S.C. §1988.

514.     As a direct and proximate result of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy and SA Swigart's illegal and unjustified conduct, Plaintiffs have and will in the future suffer and incur the following damages:

   a.  Deprivation of their constitutional rights;

   b.  Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

   c.  Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

   d.  Punitive damages;

   e.  All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

   f.  Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heather Duenow, Phillip Kennedy, and Christopher Swigart as follows:

   a.  Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

   b.  Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

   c.  Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

   d.  Punitive damages; and

e. Such relief as the Court deems just and equitable.

## COUNT II
### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983 VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### Right to be Free from Unreasonable Seizure
### Illegal Geofence Search
### (By All Plaintiffs Against Defendants David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heather Duenow, Phillip Kennedy, and Christopher Swigart, in their individual capacities)

515. Plaintiffs replead each preceding paragraph as if fully set forth herein.

516. The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches.

517. AD Jobes is a person for a §1983 action for damages.

518. SAC Nelson is a person for a §1983 action for damages.

519. SA Sanger is a person for a §1983 action for damages.

520. SA Adkins is a person for a §1983 action for damages.

521. SA Duenow is a person for a §1983 action for damages.

522. SA Kennedy is a person for a §1983 action for damages.

523. SA Swigart is a person for a §1983 action for damages.

524. At all times material hereto, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart's actions and/or omissions were made under the color of authority and law as officers and employees of the State of Iowa, DPS, and DCI.

525. On all dates relevant to the events complained of herein, Plaintiffs' constitutional rights were violated when their personal property, i.e. their cell phones and

personal data, were unlawfully seized by agents of the State of Iowa, DPS, and DCI, at the direction of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart.

526. The warrants used as justification to obtain Plaintiffs' cell phones and personal data were invalid as issued based on fruits of the poisonous tree.

527. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart were in charge of the illegal investigation which utilized GeoComply software to search into Plaintiffs' personal activity on their cell phones, which subsequently was used as justification to obtain an unlawful warrant for Plaintiffs' phones as well as unlawful subpoenas.

528. In not having constitutional authority to do so, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart had no lawful right to seize Plaintiffs' cell phones and personal data during the illegal investigation and search through Plaintiffs' personal property which Plaintiffs had undisputed privacy interests in.

529. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart violated Plaintiffs' clearly established Fourth and/or Fourteenth Amendment rights under the United States Constitution to be free from unlawful seizure.

530. On all dates relevant to the events complained of herein, the law clearly established a seizure made with an invalid warrant of a person's personal cell phone and personal data was considered fruits of the poisonous tree and violated the Fourth and/or Fourteenth Amendments of the United States Constitution.

531. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart demonstrated a deliberate indifference to and reckless disregard for Plaintiffs' civil and constitutional rights by effectuating an unconstitutional seizure.

532. The actions of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart were willful, wanton, and in gross disregard for Plaintiffs' civil rights, justifying an award of punitive damages.

533. Plaintiffs request reasonable attorney fees and costs associated with the prosecution of this action under 42 U.S.C. §1988.

534. As a direct and proximate result of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, and SA Swigart's illegal and unjustified conduct, Plaintiffs have and will in the future suffer and incur the following damages:

    a. Deprivation of their constitutional rights;

    b. Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

    c. Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

    d. Punitive damages;

    e. All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

    f. Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heather Duenow, and Christopher Swigart as follows:

67

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b. Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

c. Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

d. Punitive damages; and

e. Such relief as the Court deems just and equitable.

## COUNT III

CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983 VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

**Right to be Free from Warrantless Search
Illegally Supported Subpoenas**

*(By All Plaintiffs Against Defendants David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heather Duenow, and Christopher Swigart, in their individual capacities)*

535. Plaintiffs replead each preceding paragraph as if fully set forth herein.

536. The Fourth Amendment of the United States Constitution guarantees people the right to be free from unreasonable searches.

537. AD Jobes is a person for a §1983 action for damages.

538. SAC Nelson is a person for a §1983 action for damages.

539. SA Sanger is a person for a §1983 action for damages.

540. SA Adkins is a person for a §1983 action for damages.

541. SA Duenow is a person for a §1983 action for damages.

542. SA Kennedy is a person for a §1983 action for damages.

543. SA Swigart is a person for a §1983 action for damages.

544. At all times material hereto, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, and SA Swigart's actions and/or omissions were made under the color of authority and law as officers and employees of the State of Iowa, DPS, and DCI.

545. On all dates relevant to the events complained of herein, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart violated Plaintiffs' constitutional rights by supporting a subpoena for Plaintiffs' activity on their cell phones with illegally seized information obtained from the geofence search.

546. Plaintiffs had privacy interests in the cell phones that were searched as protected by *Carpenter v. U.S.*, 585 U.S. 296 (2018).

547. Plaintiffs had a privacy interest in their locations that were accessed via Defendants' illegal search of GeoComply, which is a right that has historically been protected by *U.S. v. Jones*, 565 U.S. 400 (2012) and *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021).

548. The subpoenas issued by AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart were not for a lawfully authorized purpose.

549. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, and SA Swigart violated Plaintiffs' clearly established Fourth and/or Fourteenth Amendment rights under the United States Constitution to be free from unlawful search.

550. On all dates relevant to the events complained of herein, the law was clearly established that subpoenas must meet the requirements of the Fourth and/or Fourteenth Amendments of the United States Constitution.

551.    AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart demonstrated deliberate indifference to and reckless disregard for Plaintiffs' civil and constitutional rights by effectuating an unconstitutional search.

552.    The actions of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart were willful, wanton, and in gross disregard for Plaintiffs' civil rights, justifying an award of punitive damages.

553.    Plaintiffs request reasonable attorney fees and costs associated with the prosecution of this action under 42 U.S.C. §1988.

554.    As a direct and proximate result of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart's illegal and unjustified conduct, Plaintiffs have and will in the future suffer and incur the following damages:

      a.  Deprivation of their constitutional rights;

      b.  Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

      c.  Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

      d.  Punitive damages;

      e.  All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

      f.  Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heather Duenow, Phillip Kennedy, and Christopher Swigart as follows:

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b. Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

c. Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

d. Punitive damages; and

e. Such relief as the Court deems just and equitable.

### COUNT IV
CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983 VIOLATION OF THE
FOURTH AND/OR FOURTEENTH AMENDMENT TO THE
UNITED STATES CONSTITUTION
**Right to be Free from Unreasonable Seizure**
**Illegally Supported Subpoenas**
***(By All Plaintiffs Against Defendants David Jobes, Troy Nelson,
Brian Sanger, Christopher Adkins, Heather Duenow, Phillip
Kennedy, and Christopher Swigart, in their individual capacities)***

555.    Plaintiffs replead each preceding paragraph as if fully set forth herein.

556.    The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures.

557.    AD Jobes is a person for a §1983 action for damages.

558.    SAC Nelson is a person for a §1983 action for damages.

559.    SA Sanger is a person for a §1983 action for damages.

560.    SA Adkins is a person for a §1983 action for damages.

561.    SA Duenow is a person for a §1983 action for damages.

562. SA Kennedy is a person for a §1983 action for damages.

563. SA Swigart is a person for a §1983 action for damages.

564. At all times material hereto, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart's actions and/or omissions were made under the color of authority and law as officers and employees of the State of Iowa, DPS, and DCI.

565. On all dates relevant to the events complained of herein, Plaintiffs' constitutional rights were violated when their personal property, i.e. their cell phones and personal data, were unlawfully seized by agents of the State of Iowa, DPS, and DCI, at the direction of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart.

566. The subpoenas, and subsequent warrants, used as justification to obtain Plaintiffs' personal data were invalid as issued based on fruits of the poisonous tree.

567. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart's investigation was not conducted for a lawfully authorized purpose and the subsequent subpoenas did not meet the requirements of the Fourth and/or Fourteenth Amendments of the United States Constitution.

568. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart were in charge of the illegal investigation, which utilized the illegally obtained geolocation information and personal activity on Plaintiffs' phones to obtain unlawful subpoenas.

569. In not having constitutional authority to do so, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart had no lawful right to seize

Plaintiffs' cell phones and personal data during the illegal investigation and search through Plaintiffs' personal property which Plaintiffs had undisputed privacy interests in.

570. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart violated Plaintiffs' clearly established Fourth and/or Fourteenth Amendment rights under the United States Constitution to be free from unlawful seizure.

571. On all dates relevant to the events complained of herein, the law clearly established a seizure made with an invalid warrant of a person's personal cell phone and personal data was considered fruits of the poisonous tree and violated the Fourth and/or Fourteenth Amendments of the United States Constitution.

572. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart demonstrated a deliberate indifference to and reckless disregard for Plaintiffs' civil and constitutional rights by effectuating an unconstitutional seizure.

573. The actions of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart were willful, wanton, and in gross disregard for Plaintiffs' civil rights, justifying an award of punitive damages.

574. Plaintiffs request reasonable attorney fees and costs associated with the prosecution of this action under 42 U.S.C. §1988.

575. As a direct and proximate result of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart's illegal and unjustified conduct, Plaintiffs have and will in the future suffer and incur the following damages:

   a. Deprivation of their constitutional rights;

b. Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

c. Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

d. Punitive damages;

e. All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

f. Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heather Duenow, Phillip Kennedy, and Christopher Swigart as follows:

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b. Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

c. Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

d. Punitive damages; and

e. Such relief as the Court deems just and equitable.

<u>COUNT V</u>
CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983
VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION
Failure to Intervene
*(By All Plaintiffs Against Defendants*
*David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heather*
*Duenow, Phillip Kennedy, and Christopher Swigart, in their individual*
*capacities)*

576. Plaintiffs replead each preceding paragraph as if fully set forth herein.

577. The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures.

578. AD Jobes is a person for a §1983 action for damages.

579. SAC Nelson is a person for a §1983 action for damages.

580. SA Sanger is a person for a §1983 action for damages.

581. SA Adkins is a person for a §1983 action for damages.

582. SA Duenow is a person for a §1983 action for damages.

583. SA Kennedy is a person for a §1983 action for damages.

584. SA Swigart is a person for a §1983 action for damages.

585. At all times material hereto, AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart's actions and/or omissions were made under the color of authority and law as officers and employees of the State of Iowa, DPS, and DCI.

586. Even though an officer has no liability under the doctrines of *respondeat superior* or supervisor liability, see *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011), at the time of this illegal investigation, it was clearly established that an officer who fails to intervene to prevent a constitutional violation by another officer may be held liable for violating the Fourth Amendment. *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009).

587. Supervisory officers who act with "deliberate indifference toward the violation," *Wagner*, 664 F.3d at 275 (quoting *Ottman v. City of Independence*, 341 F.3d 751, 761 (8th Cir. 2003)), or, in other words, are aware that their subordinates' actions create a "substantial risk of serious harm," may be liable if they fail to intervene to

mitigate the risk of harm. *Id.* (quoting *Kahle v. Leonard*, 477 F.3d 544, 551–52 (8th Cir. 2007)) (internal quotation marks omitted).

588.    On all dates relevant to the events complained of herein, each of Plaintiffs' constitutional rights were violated when (1) GeoComply software was used to illegally, and without a warrant or consent, track each of Plaintiffs' activity on their cell phones, and when (2) their personal property, i.e. their personal data and/or their cell phones, were unlawfully seized by agents of the State of Iowa, DPS, and DCI.

589.    Both the illegal search (tracking of Plaintiffs' activity) and the illegal seizure (taking of personal data held by electronic communication service providers, phones and data) were done by and/or at the direction of AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart.

590.    AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart all knew that the searches and subsequent seizures were illegal and constituted violations of each of the Plaintiffs' constitutional rights under the Fourth Amendment to the United States Constitution.

591.    AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart each had an opportunity to stop or prevent the other Defendants from continuing to utilize Kibana technology to illegally search the Plaintiffs.

592.    SA Sanger testified at his deposition that each of the Defendants were present for meetings where they discussed Kibana use in this case – and an email referenced one of these meetings – in which it is stated that they did not have probable cause a crime had been committed.

593. On February 2, 2023, SA Adkins emailed SAC Nelson and SA Sanger – in an email titled "Thoughts from Yesterday" – wherein he admits, amongst other things, that "we don't necessarily have a crime on the books in Iowa, but I think it would be a good idea to report them to the University, the Big Ten, and the NCAAS. If they get suspended or get a scholarship taken away, so be it."

594. In this email on February 2, 2023, SA Adkins made a reference to something "Heather said yesterday". This was a reference to Defendant Heather Duenow.

595. Upon information and belief, the discussion on February 1, 2023 – the day before this email – included the team members of the Unit, including SAC Nelson, SA Sanger, SA Adkins SA Duenow, SA Kennedy, and SA Swigart – and each was aware that there was not probable cause that any crimes had been committed on UI or ISU campuses yet the use of Kibana to perform geolocation searches was being utilized in violation of the Fourth Amendment of the United States Constitution.

596. AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart each had an opportunity to stop or prevent the other Defendants from requesting and issues subpoenas based on these illegal searches which the Defendants knew would violate each of the Plaintiffs' rights to be free from illegal seizures.

597. However, knowing that constitutional violations were happening and were about to happen, none of Defendants AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, or SA Swigart took any action to prevent or stop the other Defendants from violating Plaintiffs' constitutional rights.

598. The actions of each of Defendants AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart were willful, wanton, and in gross disregard for each of the Plaintiffs' civil rights, justifying an award of punitive damages.

599. Each of the Plaintiffs request reasonable attorney fees and costs associated with the prosecution of this action under 42 U.S.C. §1988.

600. As a direct and proximate result of each of Defendants AD Jobes, SAC Nelson, SA Sanger, SA Adkins, SA Duenow, SA Kennedy, and SA Swigart's illegal and unjustified conduct, each of the Plaintiffs have suffered losses to their liberty and mental and emotional anguish.

601. As a result, Plaintiffs sustained damages and injuries as follows:

   a. Deprivation of their constitutional rights;

   b. Humiliation, degradation, public ridicule, loss of personal reputation, and emotional distress;

   c. Actual and Compensatory Damages including, but not limited to past, present, and future pain and suffering and medical expenses;

   d. Punitive damages;

   e. All expenses associated with the prosecution of this action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and

   f. Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs under 42 U.S.C. §1988.

**WHEREFORE**, the Plaintiffs, collectively, pray for Judgment against the Defendants David Jobes, Troy Nelson, Brian Sanger, Christopher Adkins, Heathe Duenow, Phillip Kennedy, and Christopher Swigart, as follows:

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b. Compensation for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation;

c. Plaintiff's costs in this action, including reasonable attorney fees and costs under 42 U.S.C. § 1988;

d. Punitive damages; and

e. Such relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in this matter on all counts to which Plaintiffs are entitled to a jury.

## PRAYER

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants, and award them all relief allowed by law and equity, including but not limited to:

a. Actual economic damages as established at trial;

b. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, including but not limited to, lost wages, physical and mental pain, trauma, fear, anxiety, permanent disfigurement, loss of enjoyment of life, loss of liberty, loss of sense of security, and other nonpecuniary losses;

c. Consequential damages;

d. Punitive or exemplary damages for all claims as allowed by law in an amount to be determined at trial;

e. Issuance of an Order mandating appropriate equitable relief,

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and costs;

h. All other allowable damages against Defendants; and

Such further relief as justice requires.

**BOLES, WITOSKY, AND STEWART LAW**

BY: _/s/ Matthew M. Boles_

    Matthew M. Boles       AT0001037

    Adam C. Witosky       AT0010436

    2015 Grand Avenue, Suite 200

    Des Moines, Iowa 50312

    Telephone:    (515) 235-0551

    Facsimile:    (515) 243-3696

    Email: matt@bwsiowa.com
          adam@bwsiowa.com

    **ATTORNEYS FOR PLAINTIFFS**

**LAW OFFICE OF VAN PLUMB**

BY: _/s/ Van Plumb_

    Van M. Plumb       AT0006380

    108 3rd Street, Suite 350

    Des Moines, Iowa 50309

    Telephone:    (515) 777-3257

    Facsimile:    (515) 777-3259

    Email:  van@vplumblaw.com

    **ATTORNEY FOR PLAINTIFFS**