## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| **EYIOMA UWAZURIKE, et. al.,** | |
| **Plaintiffs,** | |
| **and** | **Case. No. 4:24-cv-00146-RGE-SBJ** |
| **PANIRO JOHNSON, et. al.** | |
| **Intervenors,** | |
| **vs.** | **REPLY TO PLAINTIFFS' and INTERVENORS' RESISTANCES TO DEFENDANTS' MOTIONS TO DISMISS** |
| **DAVID JOBES, TROY NELSON, BRIAN SANGER, CHRISTOPHER ADKINS, HEATHER DUENOW, PHILLIP KENNEDY, and CHRISTOPHER SWIGART,** | |
| **Defendants.** | |

## Table of Contents

INTRODUCTION ......................................................................................................... 2

I.   Plaintiffs/Intervenors lack Fourth Amendment standing as to third-party gambling accounts. ........................................................................................... 2

II.   Defendants performed no illegal search under the Fourth Amendment, and the third-party doctrine applies. ................................................................. 6

III.   Defendants did not illegally "seize" geolocation data or illegally support the subpoenas. ................................................................................................. 11

IV.   A failure to intervene claim is unavailable outside of excessive-force cases.. 15

V.   Plaintiffs/Intervenors establish no violation of clearly established law; qualified immunity protects Defendants. ................................................... 17

CONCLUSION ........................................................................................................... 20

**INTRODUCTION**

In their resistance briefs, Plaintiffs and Intervenors (collectively "Plaintiffs/Intervenors")[1] fail to establish any violation of a constitutional right that was clearly established under the Fourth or Fourteenth Amendments. Their arguments fail on the merits, yet they also cannot overcome qualified immunity. The illegal subpoena, failure to intervene, and causation and damages arguments fail as well.

Defendants here limit their reply to addressing specific errors Plaintiffs/Intervenors make in their Fourth Amendment, illegal-subpoena, and failure-to-intervene claims. They either rely on the wrong line of authorities and divert the Court away from applicable cases, urge applications of case law that later cases have not followed, or advance theories that courts generally—and the Eighth Circuit specifically—don't widely accept. So Defendants redirect this Court to the right authorities and the established principles under which Plaintiffs/Intervenors' claims fail. And Defendants ask this Court to dismiss the Complaints in their entirety.

## I.    Plaintiffs/Intervenors lack Fourth Amendment standing as to third-party gambling accounts.

Plaintiffs/Intervenors admit some of them used third-party Sportsbook accounts to gamble online. But they rely on the wrong line of authority when they try to claim standing as to these accounts. They also fail to show an expectation of privacy in location data associated with the accounts. Yet under the Fourth Amendment, a person does not have standing to allege a wrongdoing against someone or something else. So the standing arguments fail.

"[T]he Fourth Amendment standing inquiry is both" party- "and place-specific: it requires that a *particular* [party] ([*e.g.*, a] suppression movant) have a property or

---

[1]Plaintiffs and Intervenors make similar—sometimes identical—arguments and largely rely on the same authorities. Because Defendants' reply to each is essentially identical, Defendants have consolidated their response here for convenience and to conserve judicial resources.

privacy interest in a *particular* place (the area searched)." *U.S. v. Beaudion*, 979 F.3d 1092, 1097 (5th Cir. 2020) (emphasis original). Yet all of Plaintiffs/Intervenors' authorities concern intrusions upon <u>physical</u> spaces in circumstances that do not analogize to this case. Their authorities—*i.e.*, *Gomez*, *Lovig*, *Byrd*, *Russell*, *Sanchez*, *Macklin*, *Bettis*, *Best*, *Piedra*—concern leased premises or rental cars. But the relevant authorities analyze third-party digital or transactional accounts or devices and digital information relating to them.

Even in technology-specific cases, courts remain "[e]ver mindful of the Fourth Amendment and its [property-based] history." *Id.* at 1099 (quoting *Byrd v. U.S.*, 584 U.S. 395, 404 (2018). In *U.S. v. Beaudion*—a technology-specific case—a criminal defendant lacked standing to challenge an inspection of GPS coordinate data associated with an accomplices' phone. 979 F.3d at 1098–1100. The court noted that, historically, the common law viewed unreasonable searches as giving rise to a "person-specific harm with a person-specific remedy," and it "did not contemplate a remedy for those who objected to a trespass suffered by another." *Id.* at 1096. People may also object "to government action that violates 'a reasonable expectation of privacy . . . in the place searched." *Id.* at 1097 (quoting *Byrd*, 584 U.S. at 404). But that objection "supplements, rather than displaces 'the traditional property-based understanding of the Fourth Amendment.'" *Byrd*, 584 U.S. at 403–04 (quoting *Florida v. Jardines*, 569 U.S. 1, 11 (2013)).

The court in *Beaudion* observed the "place searched" was limited to "location information about" the accomplice's phone. *Id.* at 1099. The defendant was not able to "show a reasonable expectation of privacy in a phone and number he did not own." *Id.* On the privacy prong, the court was not persuaded by Beaudion's claims he (1) had purchased the phone, (2) had permission to use it, (3) had password access to it, (4) had accessed his Facebook account on it, and (5) had used it to capture intimate videos. *Id.*

Although the fact-pattern of *Beaudion* is different—*i.e.*, it did not analyze voluntary location-sharing as part of a transaction on someone else's digital account—it illustrates how a review of digital information from third-party property can fail to confer Fourth Amendment standing. *Beaudion* is similar in that regard to *U.S. v. Davis*, 2022 WL 3009240 at *7–8 (M.D. Ala. July 1, 2022), in which a party did not have standing to challenge a review of someone else's Google account information—Davis's "own privacy rights" were not "at stake."

Other similar, technology-related cases have reached the same result:

- ***United States v. Yang*, 958 F.3d 851, 858–859, 861 (9th Cir. 2020)**, held a defendant did not have "a reasonable expectation of privacy in his movements as revealed by the historical location data of a rental vehicle that was not returned by the rental contract due date," and lacked standing to challenge an alleged search of that location data.

- ***U.S. v. Jones*, No. 19-CR-341 (NEB/LIB), 2021 WL 1321270, at \*9 (D. Minn. Jan. 7, 2021), *report and recommendation adopted*, No. 19-CR-341 (NEB/LIB), 2021 WL 960910 (D. Minn. Mar. 15, 2021)**, held that a defendant lacked standing to suppress evidence flowing from a search of a third-party's Facebook account.

- ***U.S. v. Chatrie*, 107 F.4th 319, 326, 336 (4th Cir. 2024)**—although primarily resolved under the Third-Party Doctrine on the finding that "Chatrie did not have a reasonable expectation of privacy in two hours' worth of Location History data voluntarily exposed to Google"—also explained the defendant did not show "that the Location History data obtained by the government invaded his constitutionally protected space, like his home."[2]

- ***U.S. v. Gatson*, 744 Fed. Appx. 97, 99–100 (3rd Cir, 2018)**, held a defendant lacked standing to suppress communication data from phones he had no personal privacy interest in.

- ***U.S. v. Gaulden*, 73 F.4th 390, 393 (5th Cir. 2023)**, held a defendant lacked standing to suppress a search of a memory card containing video footage of the defendant that hadn't been shared publicly—"he neither owned nor possessed the camera or the physical memory card" that stored the video footage. He also did not prove he had a distinct property interest in the video footage. And on the privacy prong, he had "no legitimate expectation of privacy in information

---

[2]Petition for rehearing en banc granted in *U.S. v. Chatrie*, 2024 WL 4648102 (4th Cir. Nov. 1, 2024).

he voluntarily turn[ed] over to third parties." *Id.* at 394 (quoting *Carpenter v. U.S.*, 585 U.S. 296, 307 (2018)). That was so "even if the information [was] revealed on the assumption that it [would] be used only for a limited purpose and the confidence placed in the third party [would] not be betrayed." *Id.* (quoting *United States v. Miller*, 425 U.S. 435, 443 (1976)).

Although these cases are not exactly like this one, they are more on point as to the digital or informational "area searched" when that intersects with a third-party's ownership or possessory interest in an associated account or device. And the additional facts Plaintiffs/Intervenors pled—*i.e.*, downloading the apps on their phones with face-recognition or password-regulated access—do not establish standing in the place searched here: the *third-party gambling accounts* or the *location data* of those accounts.

Because Plaintiffs/Intervenors cannot succeed on the property interest prong of the standing analysis, they focus on the privacy interest prong. But their approach fails for a basic reason: sharing personal information with third-party accounts triggers the third-party doctrine.[3] *Gaulden*, 73 F.4th at 394. They try to bolster their pleadings by saying they connected personal banking to the third-party accounts, but that only makes the third-party doctrine apply twice—they've shared transactional information with not only the third-party Sportsbooks, but also the third-party accountholders and banks. They had no subjective or objectively reasonable expectation of privacy in the third-party accounts or the location data associated with them.[4] Their standing arguments fail.

---

[3]This likely explains why Plaintiffs/Intervenors were unable to locate a case on point where anyone has successfully established Fourth Amendment standing to challenge an alleged search of a third-party transactional account that they fraudulently used, much less one with voluntary location-sharing tied to those transactions.

[4]This is the same result under the *Gomez* factors, most of which cut against Plaintiffs' standing argument: Plaintiffs/Intervenors did not own the search area, and they could not have had a subjective or objectively reasonable expectation of privacy in the third-party accounts, especially under the totality of the circumstances here and the specific facts of this case. *U.S. v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994).

**II.    Defendants performed no illegal search under the Fourth Amendment, and the third-party doctrine applies.**

Plaintiffs/Intervenors case depends on *Carpenter's* exception to the third-party doctrine applying here. But this case is very dissimilar to *Carpenter*. As outlined in the initial brief, Plaintiffs/Intervenors were not forced to provide their data to the Sportsbooks. They knowingly and voluntarily provided it. They chose to use Sportsbook applications and give their locations to third parties. That is unlike the warrant in *Carpenter* that required all CSLI from every phone, whether its user knew about it or not. Plaintiff/Intervenors try to gloss over the knowing and voluntary nature of their acts by broadly relying on *Carpenter*. But they are out of step with subsequent authorities applying the case.

By its terms, *Carpenter's* holding was "a narrow one." *Carpenter*, 585 U.S. at 316. Cases applying *Carpenter* have repeatedly declined to extend its reasoning. None have adopted the broad application Plaintiffs/Intervenors urge here. The third-party doctrine applies, and Plaintiffs/Intervenors' Fourth Amendment claims fail.

A closely analogous case illustrates the point. In *Sanchez v. Los Angeles Department of Transportation*, 39 F4th 548, 552 (9th Cir. 2022), "the City of Los Angeles adopted a permitting program" for motorized e-scooters, and "required e-scooter companies to disclose real-time location data for every device." *Id*. To obtain a permit, the "LADOT required operators to provide vehicle location data through an application programing interface ('API') called Mobility Data Specification ('MDS')." *Id*. The MDS worked in conjunction with the operator's smartphone applications, and it "automatically compile[d] real-time data on each e-scooter's location by collecting the start and end points and times of each ride taken." *Id*.

An e-scooter user challenged this location-disclosure requirement, claiming it violated the Fourth Amendment. *Id*. But the Ninth Circuit disagreed and held the collection of MDS location data did <u>not</u> violate any subjective expectation of privacy

that society recognized as reasonable. *Id.* at 555, 561. The court distinguished *Carpenter* at length and held "the third-party doctrine squarely applie[d] to Sanchez's voluntary agreement to provide location data to the e-scooter operators," so "the collection of that data by LADOT [was] not a search, and [it did] not violate the Fourth Amendment or the California Constitution." *Id.* at 561.

*Sanchez* emphasized that *Carpenter* explicitly declined to overrule *Smith* and *Miller's* application of the third-party doctrine, noting that *Carpenter's* holding narrowly applied to the "collection of historical CSLI." *Id.* at 558. But the two primary rationales underlying *Carpenter's* holding did not extend to the location tracking in *Sanchez. Id.*

First, the MDS location data in *Sanchez* was not a "'pervasive' tracking of movements" as in *Carpenter* that "provided 'a detailed chronicle of a person's physical presence compiled every day, every moment, over several years,'" that also "made possible the tracking of not only Carpenter's location but also everyone else's, not for a short period but for years and years." *Id.* (quoting *Carpenter*, 585 U.S. at 313). So the "nature of the MDS location data indicate[d] a diminished expectation of privacy" for numerous reasons. *Id.* at 560. And "perhaps most obviously," the court noted, "e-scooters, unlike cell phones, are simply not 'indispensable to participation in modern society.'" *Id.* at 560 (quoting *Carpenter*, 585 U.S. at 315).

Likewise here, gambling applications are like e-scooters in this regard—they are not indispensable to participation in modern society. Unlike cellphones, most Iowans neither ride e-scooters nor use sports gambling applications.

Second, the "voluntary exposure" of the MDS location data was "[u]nlike a cell phone user, whose device provides location information 'by dint of its operation, without any affirmative act on the part of the user.'" *Id.* at 559 (quoting *Carpenter*, 585 U.S. at 315). Sanchez rather "affirmatively chose to disclose location data to e-scooter operators each time he rented a device." *Id.* And "[h]aving 'voluntarily conveyed' his

location to [e-scooter operators] 'in the ordinary course of business,' Sanchez [could not] assert a reasonable expectation of privacy." *Id.* at 559 (quoting *Smith v. Maryland*, 442 U.S. 735, 744 (1979)). Likewise here, gambling-application users affirmatively choose to disclose their location each time they use the application.

Although *Sanchez* did not involve law enforcement's review of location data, its reasoning directly applies to government actors and law enforcement. *Id.* at 561. Gambling application users knowingly and voluntarily share their location data "in the ordinary course of business" to gamble online. *Id.* at 559 (quoting *Smith*, 442 U.S. at 744). They do this through an affirmative act of opening and using a Sportsbook application. So the location tracking is not pervasive and against everyone with a smartphone over a period of "years and years." *Id.* at 558 (quoting *Carpenter*, 585 U.S. at 313). And "perhaps most obviously," Sportsbook apps, "unlike cell phones, are simply not 'indispensable to participation in modern society.'" *Id.* at 560 (quoting *Carpenter*, 585 U.S. at 315).

Other similar cases analyzing *Carpenter* have also applied its holding narrowly to reach the same result:

- ***U.S. v. Gratkowski*, 964 F.3d 307, 311–313 (5th Cir. 2020)**, found a defendant had no reasonable expectation of privacy in information on the Bitcoin blockchain or in Bitcoin transactions in Coinbase records. The court read *Carpenter* narrowly and applied the third-party doctrine, noting the "voluntariness of the exposure weigh[ed] heavily against finding a privacy interest in an individual's information on the Bitcoin blockchain" and Coinbase records alike. *Id.*

- ***Harper v. Werfel*, 118 F.4th 100 (1st Cir. 2024)**, rejected a challenge to an IRS summons of a cryptocurrency exchange's records that contained information about the plaintiff. The court read *Carpenter* narrowly, distinguished it, found the plaintiff had no reasonable expectation of privacy in the account information, had no property interest in it either, and ultimately "lack[ed] a protectable interest under the Fourth or Fifth Amendment." *Id.* at 103, 107–112.

- ***U.S. v. Adkinson*, 916 F.3d 605, 610–11 (7th Cir. 2019)**, denied a defendant's motion to suppress CSLI that a wireless carrier collected in a "tower dump" and provided to law enforcement. Regardless of the fact that the wireless

carrier was a private entity, the defendant's Fourth Amendment rights would not have been violated, because the defendant consented to the carrier collecting and sharing his CSLI, and *Carpenter* declined to rule that "tower dumps" were searches requiring warrants.

- Multiple cases decline to extend *Carpenter* to alleged searches of IP or email address data and voluntarily disclosed photos or information gathered from digital applications. ***See e.g., U.S. v. Trader*, 981 F.3d 961, 967–969 (11th Cir. 2020); *U.S. v. Hood*, 920 F.3d 87, 91–92 (1st Cir. 2019); *U.S. v. Morel*, 922 F.3d 1, 8–11 (1st Cir. 2019).**

- ***United States Dep't of Just. v. Ricco Jonas*, 24 F.4th 718, 734, 737–39 (1st Cir. 2022)**, held that people have no reasonable expectation of privacy in prescription drug records maintained in a Prescription Drug Monitoring Program database and affirmed an order enforcing an administrative subpoena for certain records. The court distinguished *Carpenter* on the two rationales discussed above and applied the third-party doctrine to reach its holding. *Id.* at 737–39. The case also held that "the closely regulated nature of the pharmaceutical industry" precluded a person from claiming "'an objectively reasonable expectation of privacy' in [their] prescription drug records included in the PDMP database." *Id.* at 734.[5]

The narrow reading of *Carpenter* is not foreign to the Eighth Circuit either. In 2022, the Eighth Circuit denied a defendant's motion to suppress "based on the warrantless collection of GPS location data" from a tracking device installed with owner's consent on a vehicle the defendant borrowed. *U.S. v. Dewilfond,* 54 F.4th 578, 579 (8th Cir. 2022). Observing that its holding was narrow, the Eighth Circuit distinguished *Carpenter* and held that surveillance of "real-time GPS data 'to find [Dewilfond's] location in public,'" did not "peer into the intricacies of his private life," and did not violate the Fourth Amendment. *Id.* at 581; *see also U.S. v. Shipton*, 5 F.4th 933 (8th Cir. 2021) (concerning an officer's review of a computer file located on a peer-to-peer network using a "hash value" that identified it as child pornography, the court read *Carpenter* narrowly and distinguished it, holding people have no "reasonable

---

[5]The same 'closely-regulate industry' doctrine likewise applies here—the gambling industry is closely regulated as Defendants showed in the opening briefs, and Plaintiffs/Intervenors have a reduced expectations of privacy in it.

expectation of privacy in things such as a user's IP address and other subscriber information").

The facts of this case go one step beyond *Sanchez—i.e.*, that case did not involve voluntary location-sharing as part of a transaction on an online digital account in a highly regulated industry in which law enforcement and regulators reviewed the data. And these other cases have some factual differences also. Yet the reasoning of these cases extends here—Plaintiffs/Intervenors (1) knowingly and voluntarily exposed their location data to gamble online, and (2) the nature of that data is unlike the CSLI sought under the warrant in *Carpenter*: users share it through an affirmative act of opening their gambling apps, and these apps, unlike cell phones, are not "'indispensable to participation in modern society.'" *Sanchez,* 39 F.4th at 560 (quoting *Carpenter*, 585 U.S. at 315). There was no search here, and the third-party doctrine applies to this case.

Plaintiffs/Intervenors rely entirely on *Carpenter's* narrow exception and aver that it applies here. It doesn't. And they don't grapple with the recent, consistent authorities applying *Carpenter* narrowly, especially in analogous contexts where voluntary transactions or information sharing occurs in digital spaces. And while Defendants acknowledge these authorities may have slight factual differences to the present matter, that only reinforces the qualified immunity argument discussed more below. This is a one-of-a-kind case. Plaintiffs/Intervenors offer no "controlling authority" to support their Section-1983 action. *See Ashcroft v. al-Kidd,* 563 U.S. 731, 741–42 (2011). And to the extent any "robust consensus" of persuasive authorities emerges from these cases, *see id.*, it undermines Plaintiffs/Intervenor's reading of *Carpenter* and supports Defendants' case.

The third-party doctrine "squarely applies" to the voluntary location-sharing here. *Sanchez*, 39 F4th at 561. Plaintiffs/Intervenors Fourth Amendment claims fail.

III.  **Defendants did not illegally "seize" geolocation data or illegally support the subpoenas.**[6]

Plaintiffs'/Intervenors' illegal-seizure claims are actually illegal search claims—this case concerns a review of intangible data voluntarily shared with third parties, not a "seizure" or interference with Plaintiffs' possessory interests. The illegal subpoena claims likewise assume Sanger reviewed the geolocation data in an illegal search. But there was no illegal search. And those points won't be reargued. These claims fail as a matter of law.

The unlawful seizure claim also fails because Plaintiffs/Intervenors cited no clearly-established law showing that the mere review of the intangible data here—*i.e.*, geolocation data voluntarily given to sports-wagering companies to prove territorial compliance with state gambling laws under a unique contractual and regulatory environment—amounts to an unlawful "seizure" of that data within the meaning of the Fourth Amendment. They cite *Katz v. U.S.*, 389 U.S. 347 (1964), and *Berger v. State of New York*, 388 U.S. 41 (1967), but those cases are distinguishable, and subsequent authorities have limited their reach. They don't apply here.

*Berger* involved a statute granting law enforcement a "blanket grant of permission to eavesdrop . . . without adequate judicial supervision or protective procedures," thus, "resulting in a trespassory intrusion into a constitutionally protected area" and so was "violative of the Fourth and Fourteenth Amendments." 388 U.S. at 43, 60. And *Katz* involved surreptitiously recorded voice conversations from a device on a public telephone booth. *Katz*, 389 U.S. at 348–49.

---

[6]Plaintiffs alleged separate illegal-seizure and illegal-subpoena claims. Intervenors did not allege a separate illegal subpoena claim but made substantially similar arguments relating to subpoenas in support of their illegal seizure claim. Because the arguments and authorities they rely on are similar, Defendants reply to these claims in consolidated fashion here.

Both cases confronted primarily the issue of intrusive searches; they referenced only incidentally intangible seizures—and only in the context of voice recordings. *Berger* primarily concerned the scope of a statute in authorizing "a trespassory intrusion into a constitutionally protected area." *Berger*, 388 U.S. at 44. While *Katz* held "constitutionally protected area" is a "misleading" way to frame Fourth Amendment issues, because "the Fourth Amendment protects people, not places." *Katz*, 389 U.S. at 351.

*Katz* discussed voice recordings in the context of non-trespassory surveillance. *Id.* at 353 ("[T]he Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording of oral statements overheard without any 'technical trespass under . . . local property law.'" (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961))). But that supported the point that "the reach of [the Fourth Amendment] cannot turn on the presence or absence of a physical intrusion into any given enclosure." *Id.*

Although *Katz* and *Berger* indiscriminately reference "search and seizure" in Fourth Amendment law, the intrusive *searches* they analyze must be kept in mind. And to the extent they recognize intangible seizures of voice recordings, this case isn't that. Plaintiffs/Intervenors provided no authority extending these cases to voluntarily shared location data from gambling apps, likely because no such authority exists.

As to that data, Sanger merely reviewed what Plaintiffs/Intervenors shared. He did not record, copy, or otherwise dispossess Plaintiffs/Intervenors of any property or possessory interests. *Katz* also concerned officers' direct recording of the defendant. It did not involve any voluntary data transfer to a third-party intermediary who held the data—that's why this case comes within the third-party doctrine and why *Katz* and *Berger* are inapposite.

Inspection of intangible data is more often a search issue than a seizure issue. And cases after *Katz* and *Berger* have not extended their holdings to cases like this. As Justice Stevens explained in *Texas v. Brown*, there are "important differences between" searches and seizures, even though "cases sometimes refer indiscriminately to" them. 460 U.S. 730, 748 (1983) (Stevens, J., concurring). "The [Fourth] Amendment protects two different interests of the citizen—the interest in retaining possession of property and the interest in maintaining personal privacy." *Id.* "A seizure threatens the former," Justice Stevens explained, and "a search the latter." *Id.*

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *Maryland v. Macon*, 472 U.S. 463, 469 (1985) ("Here, respondent voluntarily transferred any possessory interest he may have had in the magazines to the purchaser upon the receipt of the funds," so a purchase of the magazines by an undercover officer was not a seizure (quoting *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984))).

Applying this rule, the U.S. Supreme Court held in *Arizona v. Hicks*, 480 U.S. 321, 324 (1987), "that the mere recording of . . . serial numbers did not constitute a seizure." Although taking these serial numbers led to police ultimately seizing the stereo equipment the serial numbers came from, recording the numbers "[i]n and of itself . . . did not 'meaningfully interfere' with respondent's possessory interest in either the serial numbers or the equipment, and therefore did not amount to a seizure." *Id.* (quoting *Macon*, 472 U.S. 463, 469 (1985)).

Likewise, although Sanger's review of geolocation data here led to police ultimately seizing Plaintiffs/Intervenors' phones under valid warrants, reviewing the data "[i]n and of itself . . . did not 'meaningfully interfere' with [their] possessory interest [in the location data or associated gambling accounts], and therefore did not amount to a seizure." *Id.* Like *Macon*, Plaintiffs/Intervenors did not show they had "possessory interests" in the data—they established no such possessory interest to

begin with, but much less one that they retained after they shared their locations with the Sportsbooks. *Id.*

Other courts after *Katz* and *Berger* have likewise not embraced the intangible seizures Plaintiffs/Intervenors urge here, even where copying was involved. *United States v. Chapman*, 559 F.2d 402, 407–08 (5th Cir. 1977) (photocopies of documents from a file cabinet was not a seizure); *United States v. Thomas*, 613 F.2d 787, 789 (10th Cir. 1980) (FBI's photocopy of pornography were not a seizure); *United States v. Mancari*, 463 F.3d 590, 596 (7th Cir. 2006) (photographs of the scene where a search warrant was executed was not a seizure); *McDonald v. State*, 119 S.W.3d 41 (Ark. 2003) (copying a car's VIN number was not a seizure).

The Eighth Circuit has also not embraced Plaintiffs/Intervenors approach. In *U.S. v. Clutter*, 674 F.3d 980, 984 (8th Cir. 2012), the Eighth Circuit instead embraced Justice Stevens's concurrence from *Texas v. Brown* as discussed above. A "seizure threatens" an "interest in retaining possession of property," the court held, and "a search" threatens an "interest in maintaining personal privacy." *Clutter*, 674 F.3d at 984 (quoting *Brown*, 406 U.S. at 747–48). And further, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in the property." *Id.* (quoting *Jacobsen*, 466 U.S. at 113). Although the seizure issue in *Clutter* concerned a third-party's consent to seize physical computers, the court had to distinguish the search law from the seizure law, because the defendant there premised his argument on consent-to-search—not consent-to-seize—factors. *Id.* at 984–85. In doing so, the court followed *Jacobsen*, *Brown*, and *Hicks*, not Plaintiffs/Intervenors' approach.

Plaintiffs/Intervenors have not shown how Defendants "meaningfully interfered" with their possessory interests. *Jacobsen*, 466 U.S. at 113. And they cite nothing resembling a "controlling authority" or a "robust consensus" of persuasive authorities to place the "constitutional question beyond debate." *Kelsay v. Ernst*, 933

F.3d 975, 979 (8th Cir. 2019). No law enforcement officer took ("seized") anything from Plaintiffs/Intervenors before the search warrants. Defendants merely looked at data that belonged to the Sportsbooks. Plaintiff/Intervenors' illegal seizure claims fail on the merits and on qualified immunity.

Next, both Plaintiffs/Intervenors claim an investigatory subpoena first requires "an investigation taking place regarding a complaint about criminal activity." [R.Doc. 50-1 p. 34; R.Doc. 53 p. 45]. But they cite no case establishing this criminal-complaint precondition. Rather *State v. Kelley* suggests the opposite: "It seems well-established that investigatory subpoenas may lawfully issue in situations where no violation of criminal law is involved." 353 N.W.2d 845, 847 n.1 (Iowa 1984).

Regardless, Sanger was investigating criminal activity, and under the subpoena power, "society has a strong interest in allowing official investigators of criminal activity broad authority to conduct thorough investigations." *Chidester v. Needles*, 353 N.W.2d 849, 853 (Iowa 1984). "Administrative agencies" have "broad investigative powers to enable them to effectively carry out their legislative mandates." *Iowa C.R. Comm'n v. City of Des Moines/Pers. Dep't*, 313 N.W.2d 491, 495 (Iowa 1981). They're empowered "to conduct investigations for the purpose of ascertaining probable cause." *Id.* And Courts are "cautious to interfere with agency subpoena powers except to preserve due process rights." *Id.*

No law enforcement officer seized anything that belonged to Plaintiffs/Intervenors before the search warrants. And Plaintiffs/Intervenors cite no clearly established law saying a specific complaint about criminal activity must instigate the officer's investigation before an investigatory subpoena may lawfully issue. The arguments fail.

## IV.    A failure to intervene claim is unavailable outside of excessive-force cases.

In the opening briefs, Defendants showed that no clearly established law in the Eighth Circuit creates a duty to intervene to prevent constitutional violations "outside of the excessive force context." *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013).

But Plaintiffs/Intervenors ignore this and instead claim they only need to show "*an* underlying Constitutional violation." [R.Doc. 53 p. 46]. According to Plaintiffs, "[t]he case law clearly states this," and they further claim excessive force cases have "no effect on the established case law that other claims of constitutional violations can also raise to a failure to intervene concern." [*Id.* p. 47]. Plaintiffs claim the "Eighth Circuit acknowledged [this] more than a decade ago," [*id.*], and Intervenors claim that "[t]his is the central premise of the failure to intervene cases, regardless of the nature of the underlying violation, as established by robust consensus." [R.Doc. 50-1 p. 35]. The intervenors also add that "the Eighth Circuit has not expressly refused to acknowledge these claims either." [*Id.*]

But that's false. The Eight Circuit has in fact confronted this issue, and it has <u>refused</u> to recognize the failure-to-intervene action except in excessive force cases: "[T]here is no clearly established law regarding a duty to intervene outside of the excessive force context." *Bloodworth v. Kansas City Bd. Of Police Comm'rs*, 89 F.4th 614, 628 n.5 (8th Cir. 2018); *also Hess*, 714 F.3d at 1052.

Even the caselaw Plaintiffs/Intervenors cite holds this. *E.g.*, *Perkins v. City of Des Moines, Iowa*, 712 F. Supp. 3d 1159, 1181 (S.D. Iowa 2024) ("[A] failure-to-intervene claim may not prevail in the absence of a showing of excessive force" (quoting *Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018) and (citing *Bloodworth*, 89 F.4th at 628 n.5 ("[T]here is no clearly established law regarding a duty to intervene outside of the excessive force context."))); *e.g. also*, *Zubrod*, 907 F.3d at 580 ("[B]ecause a failure-to-intervene claim may not prevail in the absence of a showing of excessive force, we also hold that the district court properly granted summary judgment to Deputies Short and Smith on Zubrod's failure-to-intervene claim"); *Livers v.*

*Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("We have not recognized a duty to inter-
vene to prevent other constitutional violations.")

The Eight Circuit has not revised its approach in newly decided authority. In
November 2024, the Eastern District of Missouri observed, "The Eighth Circuit has
not recognized a failure to intervene claim outside of the Fourth Amendment exces-
sive force context." *Jones v. Mississippi Cnty., Missouri*, No. 1:23-CV-150 SRW, 2024
WL 4664213, at *5 (E.D. Mo. Nov. 4, 2024). The court went further and held it didn't
apply "to prevent the abuse of someone's privacy rights," because "[t]he Eight Circuit
has only recognized a failure to intervene claim in the context of excessive force." *Id.*

Plaintiffs and Intervenors misread the case law, and their failure-to-intervene
claims fail.

## V.    Plaintiffs/Intervenors establish no violation of clearly established law; qualified immunity protects Defendants.

In their brief discussion of qualified immunity, Plaintiffs/Intervenors primarily
relied on three points to contend Defendants violated clearly established law. The
first is that *Carpenter* clearly established the alleged privacy interest involved here.
The second is that the Eighth Circuit did the same thing in *U.S. v. Sesay*, 937 F.3d
1146 (8th Cir. 2019). The third is that this case involves a typical geofence search.

Defendants have distinguished *Carpenter* at length—this case is very dissimi-
lar to *Carpenter*, the third-party doctrine applies, and the many points related to this
won't be reargued. Defendants have also explained at length how this case does not
involve a typical geofence search, and these points won't be reargued either. So De-
fendants respond only to the *Sesay* case raised in resistance.

*U.S. v. Sesay* does not show that Defendants violated clearly established law;
it shows just the opposite. A defendant in that case was convicted of aggravated iden-
tity theft and conspiracy to commit bank fraud. 937 F.3d at 1149. He sought to sup-
press information that officers gathered by examining a guest registry at a motel he

stayed in. *Id.* at 1151. The officers used that information to check for outstanding warrants, and while doing this, they found the defendant used a fraudulent identification card at the motel. *Id.* The defendant argued he "had a reasonable expectation of privacy in his *registration* as a guest at the motel, and that officers violated his Fourth Amendment rights by demanding to inspect the registry." *Id.* at 1151–52 (emphasis original). But the Eight Circuit disagreed.

The Eighth Circuit applied the third-party doctrine, holding "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," *id.* (quoting *Smith*, 442 U.S. at 743–44), "[e]ven where a person discloses" the information "on the assumption that it will be used only for a limited purpose." *Id.* (quoting *Carpenter*, 585 U.S. at 308). To distinguish the case from *Carpenter*, the court in *Sesay* noted in dicta that the "doctrine does not extend to the novel phenomenon of cell phone location records," but the court then affirmed that it does encompass "checks and deposit slips retained by a bank, income tax returns provided to an accountant, and electricity-usage statistics tracked by a utility company." *Id.* at 1152.

The holding in *Sesay* is consistent with established Fourth Amendment doctrine holding that people do not have a reasonable expectation of privacy in transactional accounts and records. *E.g., Miller*, 425 U.S. at 443. But that's exactly what these gambling applications are: transactional accounts and records. Under *Sesay*, the third-party doctrine applies, and no Constitutional violation occurred.

This case is a digital analogue to *Sesay*. The inspection of the registry there, like the review of Sportsbooks' data here, involved voluntary transactions with third parties that ultimately revealed unlawful activity. The third-party doctrine applies here just as it did in *Sesay*.

Also, *Sesay* was not a "cell phone location records" case, and the dicta Plaintiffs/Intervenors selectively quoted was not "settled law" established by "controlling authority or a robust consensus" of "persuasive authority." *Al-Kidd*, 563 U.S. at 741–

42. And this case doesn't involve cell-phone location records either, as that phrase was used by *Sesay* in reference to *Carpenter*. *Carpenter* narrowly concerned only "the deeply revealing nature of [cell site location information], its depth, breadth, and comprehensive reach, and the inescapable and automatic nature of its collection." 585 U.S. at 320. The Court specifically "decline[d] to grant the state unrestricted access to a wireless carrier's database of physical location information." *Id*.

That's not this case. And *Sesay* did not opine on location data that people share with online gambling companies to gamble online, especially where the sharing is under the user's control, requires an affirmative act by the user, and is necessary to comply with territorial gambling regulations, and also where users are warned their data may be disclosed to third-parties, vendors, government, or law-enforcement. Plaintiffs/Intervenors' resistances failed to show Defendants violated any clearly-established, Fourth Amendment law. Their Fourth Amendment claims fail. And qualified immunity protects Defendants.[7]

---

[7]Plaintiffs/Intervenors have freely argued their cases to the media, but even the media's reporting supports Defendants actions and their qualified immunity argument. Although sports commentators are not legal experts, one media outlet reported:

> Orin Kerr, a law professor and Fourth Amendment expert at the University of California, Berkeley, agreed with [Johnson County Attorney] Zimmermann Smith that the warrantless searches were legal. He told the Register that DCI agents did not need a warrant to track bettors' locations with GeoComply's software.

> While courts have yet to weigh in on many elements of how law enforcement officers have used geolocation data, Kerr said the police do not need a warrant when all parties freely give up their data.

> In the Iowa cases, the defendants agreed to share their data with DraftKings and FanDuel. Those companies, in turn, shared the data with GeoComply, which shared it with the DCI. Those agreements amounted to a chain of consent, Kerr said.

## CONCLUSION

Plaintiffs/Intervenors establish no violation of a constitutional right that was clearly established under the Fourth or Fourteenth Amendments. Their illegal-subpoena and failure-to-intervene claims have no merit. All their claims fail. Defendants respectfully ask this Court to dismiss Plaintiffs/Intervenors' Complaints in their entirety.

---

Tyler Jett, <u>How a tech company encouraged Iowa's sports gambling investigation, then walked away</u>, The Des Moines Register (April 10, 2024, 11:08 AM), https://www.desmoinesregister.com/story/news/investigations/2024/04/09/how-a-private-tech-company-pushed-iowa-sports-betting-probe-then-walked/73210982007/.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa


/s/ *DANIEL J. JOHNSTON*
RYAN W. PELL
CHAD D. BRAKHAHN
DANIEL J. JOHNSTON
Assistant Attorneys General
Department of Justice
Hoover State Office Building, 2nd Floor
Des Moines, IA 50309
Telephone: (515)281-5164
Ryan.Pell@ag.iowa.gov
Chad.Brakhahn@ag.iowa.gov
Daniel.Johnston@iowadot.us
Attorneys for Defendants

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served on each of the persons identified as receiving a copy by delivery as follows on March 27,2025:

☐ U.S. Mail                    ☐ FAX
☐ Hand Delivery                ☐ Overnight Courier
☐ Federal Express              ☐ Other
☒ CM/ECF System Participant (Electronic Service)

Signature: */s/ Jodi Watson*